PER CURIAM.
| ,In this matter, we are called upon to decide whether the court of appeal erred in reversing a judgment of the Office of Workers’ Compensation (“OWC”), which *1255 held that the claimant failed to establish by a preponderance of the evidence that a workplace accident occurred. For the reasons that follow, we conclude the court of appeal erred in reversing the OWC’s judgment.
UNDERLYING FACTS AND PROCEDURAL HISTORY
Henry Marange filed a disputed claim for compensation against his employer, Custom Metal Fabricators, Inc. (“Custom Metal”), asserting he injured his back in a work-related accident. Custom Metal answered the petition, and denied Mr. Mar-ange’s allegation that he suffered a work-related accident.
The matter proceeded to a trial before the OWC. At trial, Mr. Marange testified that on the day of the accident, he was asked to grind the inside seam on a fairly large cone-shaped vessel, using a forty-pound, seven-inch grinder. Mr. Marange testified he stood inside a cone-shaped section of a vessel to grind the seam at shoulder-level. While standing, his foot slipped on grinding dust, and his body twisted to the left as he fell forward, with the weight of the turning grinder and the force of the forward motion. Although Mr. Marange admitted he felt a burning and pulling in his lower back and buttocks, he testified he did not report the accident, continued to work, and | ?did not believe he was injured, because back strain and soreness was common and happens frequently with a grinder that size. During his morning break, almost an hour after the accident, Mr. Marange testified he received a call that his invalid mother was believed to be having a stroke or a heart attack. Mr. Mar-ange testified that he left work to care for his mother, and did not return to work that day. According to Mr. Marange, his mother had suffered three previous major strokes, and could not walk or talk. Mr. Marange testified that he proceeded to his sister’s home to convince his mother to go to the hospital, but went home when he was unable to do so. Although Mr. Mar-ange admitted his mother is in a wheelchair with severely limited mobility, he testified he did not lift his mother during the visit. Mr. Marange asserted he awoke the next day with burning and pulling in his low back and right leg, and required assistance getting out of bed. Mr. Mar-ange testified he called work and spoke to Karen Porter, the bookkeeper, to ask to be sent to a physician. Ms. Porter returned Mr. Marange’s call to inform him Custom Metal would not pay for medical treatment, because he did not report the accident.
Macie Johnson, Mr. Marange’s live-in girlfriend, testified she called Mr. Marange at work on the day of the accident to tell him she believed his mother had a stroke or a heart attack. She testified Mr. Mar-ange’s mother had a previous stroke and requires total care. According to Ms. Johnson, she and Mr. Marange were at his mother’s home for an hour before they went home, and Mr. Marange did not lift his mother during that visit or at any other time. Ms. Johnson testified she is always responsible for lifting his mother.
Michael McKean, the shop foreman and Mr. Marange’s supervisor, testified Mr. Marange had been employed with Custom Metal for a month prior to his accident, and had previously left work early for several reasons during his short | ^employment. According to Mr. McKean, Mr. Manage had excessive absences, was counseled about those absences, and told that he had already missed more work than was normal.
Kyle Bourgeois, the quality control manager for Custom Metal, testified he was Mr. Marange’s acting supervisor on the *1256 day of the accident. Mr. Bourgeois testified Mr. Marange did not report an injury to him on the day of the accident, and that Mr. Marange left work early to tend to a family emergency. According to Mr. Bourgeois, Mr. Marange was working with a seven-inch grinder that weighed ten to twelve pounds. Mr. Bourgeois testified Mr. Marange would never have an occasion to grind over his head, because the top of the cylinder would be rotated to become the floor, and could be grinded in that manner. Mr. Bourgeois testified the shop had overhead cranes available to rotate the cylinders, and that two men are required to do this. Mr. Bourgeois testified that on the date of the accident, he observed Mr. Marange sitting down grinding, and did not see Mr. Marange standing and operating the grinder at shoulder level.
Karen Porter, the bookkeeper for Custom Metal, testified that she spoke to Mr. Marange on the day after the accident. At that time, he requested to see a doctor because he claimed he hurt his back at work, but did not tell Ms. Porter any specifics of the injury or how it occurred. According to Ms. Porter, Mr. Marange told her “I must have done it [injured himself] there.” After checking with Jimmy Cuerton, the owner of Custom Metal, she was advised to tell Mr. Marange that Custom Metal would not pay for a doctor, because Mr. Marange had not reported an accident the day before. According to Ms. Porter, Mr. Marange requested in the second phone call to be laid off so that he could collect unemployment, saying “I don’t have any money.” Ms. Porter testified Mr. Marange was not laid off, because there was work |4to be done, and he did not bring any documentation of his injury. Ms. Porter stated Custom Metal took the position that Mr. Marange had quit, because he did not come back to work.
Micheál Ellzey, a tack helper employed by Custom Metal, testified he worked with Mr. Marange on the day of the accident. According to Mr. Ellzey, he was assigned to the same cylinder as Mr. Marange, and was given a five or six-pound seven-inch grinder. Mr. Ellzey testified he had never used a grinder other than seated on the floor, and that it was procedure to grind the walls flat, or sit down and grind them, then have the cylinder rolled with the crane so the old welds are flat on the ground. Mr. Ellzey testified the cylinder is usually rolled before the grinders reach the sides, because it is a lot harder to hold up the grinder. Mr. Ellzey testified that when he observed Mr. Marange working on the day of the accident, Mr. Marange was sitting or kneeling on the floor. According to Mr. Ellzey, it would be difficult to grind that particular vessel while standing, and the side would be hard to get to because of the way it is rolled. Mr. Ellzey testified it would be unusual for someone to stand while grinding. He also testified it is not difficult to rotate a cylinder with an overhead crane, and that cylinders are typically rolled every other day due to the amount of grinding necessary. Mr. Ellzey testified it would have been difficult for Mr. Marange to stand, put his foot on the side of the cylinder, and grind it at shoulder level, because “[y]ou have to be bent over and grinding.” Mr. Ellzey testified he was with Mr. Marange the entire morning, with the exception of running a few short errands and getting a drink of water. Mr. Ellzey also testified the only grinding on the day of the accident occurred on the bottom of the cylinder.
IsAfter the conclusion of trial, the OWC rendered judgment in favor of Custom Metal. In its reasons for judgment, the OWC hearing officer found Mr. Marange’s version of the incident was not credible, stating:
*1257 Based on the Bruno [v. Harbor [Harbert] International, 593 So.2d 357 (La.1992) ] case, the Court finds that other evidence discredits or casts serious doubt on Mr. Marange’s version of the incident. Mr. Marange has failed to establish, by a preponderance of the evidence, that he was injured when he slipped while grinding above head with a heavy grinder. The testimony of Mr. Marange and the defense witnesses are not the same. Instead, the claimant’s version of events is discredited by the testimony of fellow workers and supervisors. The corroborative testimony and their circumstances following shortly after the event fall short of helping Mar-ange prove his case. Marange went home without reporting an accident. He had only recently started the job in November of 2008. During his short stay on the job, he had already been counseled for absenteeism. At best, the evidence is evenly balanced. Marange testified he was grinding overhead. Other witnesses disputed that claim. Grinding overhead simply did not comport with the witnesses who are not trying to hurt Marange, but who were simply trying to explain how they worked with the metal. The evidence of fellow workers was rational and reasonable. For these reasons, Marange fails to carry his burden by a preponderance of the evidence. Therefore, judgment is rendered against Mr. Marange and in favor of Custom Metal Fabricators.
Mr. Marange appealed. The Court of Appeal, Third Circuit, reversed the judgment of the OWC, and awarded Mr. Mar-ange temporary total disability benefits, as well as medical expenses, penalties, and attorney fees. Marange v. Custom Metal Fabricators, Inc., 11-743 (La.App. 3 Cir. 11/2/11), 75 So.3d 990.
Upon Custom Metals’ application, we granted certiorari to review the correctness of that decision. Marange v. Custom Metal Fabricators, Inc., 11-2678 (La.2/17/12), 82 So.3d 273.
IfiDISCUSSION
An employee in a compensation action must establish “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031(A). The Workers Compensation Act defines an accident as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1).
The employee in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357, 360 (La.1992); Ardoin v. Firestone Polymers, L.L.C., 10-0245, p. 5 (La.1/19/11), 56 So.3d 215, 218. An employee may prove by his or her testimony alone that an unwit-nessed accident occurred in the course and scope of employment, if the employee can satisfy two elements: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Bruno, 593 So.2d at 361; Ardoin, 56 So.3d at 218-219. In deciding whether the plaintiff has discharged his or her burden of proof, the fact-finder should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” Bruno, 593 So.2d at 361. The fact-finder’s determinations as to whether the worker’s testimony *1258 is credible, and whether the worker has discharged his or her burden of proof, are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno, 593 So.2d at 361; Ardoin, 56 So.3d at 219.
|7In the instant case, Mr. Marange testified the accident occurred when he slipped while standing and holding a heavy grinder at shoulder level. The OWC concluded Mr. Marange’s version of events was called into question by other employees, who testified it was unlikely Mr. Mar-ange would have used the grinder while standing. The OWC also found the circumstances following the alleged incident did not corroborate Mr. Marange’s testimony, as he admitted he went home without reporting the accident.
In reversing the OWC’s judgment, the court of appeal reasoned the testimony of Mr. Marange’s co-workers did not directly contradict Mr. Marange’s version of events, as they did not testify that there was never an occasion where an employee might use a grinder at shoulder level. It also dismissed Mr. Ellzey’s testimony, in which he stated it was unusual to stand while grinding, finding that Mr. Ellzey hesitated and changed his answer. The court of appeal also rejected the testimony of those witnesses who testified they had only seen Mr. Marange grinding from, a seated position on the morning of the accident, stating “[tjhis testimony, however, accounts for only a few minutes of a two- and-one half hour period of work, and it does not seriously discredit, as Bruno requires, Mr. Marange’s testimony that he was standing when the accident occurred.”
The court of appeal’s reasoning in this case reveals a fundamental misunderstanding of the principles of appellate review of facts as developed in this court’s jurisprudence. Nearly forty years ago, in Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973), this court, in an opinion by Justice Tate, set forth the bedrock principle that a reviewing court must give deference to the findings of the trier of fact:
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual [ ^finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
During the four decades which have passed since Canter was rendered, this court has consistently and scrupulously adhered to the rule set forth in that case. See, e.g., Richard v. Richard, 11-0229 (La.10/25/11), 74 So.3d 1156; London Towne Condominium Ass’n v. London Towne Co., 06-401 (La.10/17/06), 939 So.2d 1227; Bonnette v. Conoco, Inc., 01-2767 (La.1/28/03), 837 So.2d 1219; Batson v. South Louisiana Medical Center, 99-0232 (La.11/19/99), 750 So.2d 949; Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Sevier v. United States Fidelity & Guaranty Co., *1259 497 So.2d 1380 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
In the case at bar, the court of appeal failed to focus on whether the trier of fact’s determinations were reasonable based on the record as a whole. Instead, the court re-weighed the evidence, and reached its own factual conclusions from the record. This method of review is precisely the approach we cautioned against in Stobart, 617 So.2d at 882, where we stated:
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. laSee generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So .2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)). [emphasis added]
Applying the correct standard of review, we are convinced that the factual findings made by the OWC are reasonable in light of the entirety of the record. The testimony of Mr. Marange’s co-workers established it was not typical for employees to use large grinders at shoulder level, thereby discrediting Mr. Marange’s version of events. The OWC explained the testimony of these witnesses was “rational and reasonable,” and noted there was no indication they had any bias against Mr. Mar-ange. These credibility findings are entitled to great weight, because the trier of fact “is in a superior position to observe the nuances of demeanor evidence not revealed in a record.” In re A.J.F., 00-0948, p. 26 (La.6/30/00), 764 So.2d 47, 62. Additionally, the OWC emphasized Mr. Mar-ange’s failure to report the accident in a prompt manner, and pointed out he had a history of absences during his short | ^employment history with Custom Metal. These findings are supported by the record, and are not manifestly erroneous.
In summary, considering the record as a whole, we cannot say the OWC was clearly wrong in finding Mr. Marange failed to establish by a preponderance of the evidence that a workplace accident occurred. The court of appeal erred in reversing the judgment of the OWC. Accordingly, we must reverse the judgment of the court of appeal, and reinstate the judgment of the OWC.
DECREE
For the reasons assigned, the judgment of the court of appeal is reversed, and the *1260 judgment of the Office of Workers’ Compensation is reinstated.