MARC E. JOHNSON, Judge.
12Plaintiff, Drew Blatcher, appeals from a judgment of the Office of Workers’ Compensation finding he failed to prove a work-related injury and, thus, was not entitled to workers’ compensation benefits. For the reasons that follow, we affirm.
Plaintiff filed a Disputed Claim for Compensation on April 20, 2010, seeking workers’ compensation benefits for a back injury he allegedly sustained on August 3, 2009,[1] while in the course and scope of his employment with Brand Staffing Services, Inc. (“Brand Staffing”). He asserted his back “gave out” after he continually lifted 100-150 lb. scaffold boards using a rope while leaning over from a height of 75-100 feet. He alleged that despite the work-related injury, his employer had failed to pay any indemnity or medical benefits. Brand Staffing | .¡responded by claiming Mr. Blatcher did not sustain an accident or injury within the meaning of the Louisiana Workers’ Compensation Act.
Trial was held on September 7, 2011. At the beginning of trial, the parties stipulated that Mr. Blatcher was employed by Brand Staffing on the date of the alleged injury. Mr. Blatcher, age 34, testified he was employed by Brand Staffing to build scaffolds and had been so employed for a little less than one year before the accident. He explained that his job involved standing on the edge of a scaffold and pulling materials, including 100 lb. boards, from at least 20 feet below, up and over the scaffold rail.
Mr. Blatcher testified that two weeks before his accident, his back started hurting, but he was able to work. On the day of the accident, Mr. Blatcher reported to work at the Valero’s chemical plant and started work at 7:00 a.m. He stated that right before lunch his back gave out while he was pulling a metal board over the railing, which caused him to fall to his knees. He managed to climb down the scaffolding and walk to a break area, or the “smoke pen,” where someone called his supervisor, Davin Louque, who then called the safety manager, Jose Sardina.
According to Mr. Blatcher, when Mr. Louque and Mr. Sardina asked what happened, he stated that his back “went out.” They then asked him if he had any prior back problems to which Mr. Blatcher responded that he had back surgery ten to 12 years earlier. Mr. Sardina testified that Mr. Blatcher never told him that his back “went out” or that he injured his back while working. Rather, Mr. Sardina stated that Mr. Blatcher only said he had been having back pain for the last couple of weeks.
Mr. Sardina took Mr. Blatcher to the nurse’s station on Valero’s premises. According to Mr. Blatcher, he was again asked what happened, and he again stated 14that his back “went out.” He was told to see a doctor and to return to work once he obtained a doctor’s release. Mr. Sardina then drove Mr. Blatcher home.
The next morning, Mr. Blatcher went to the emergency room at Ochsner Medical Center — Kenner complaining of mild to *1185 moderate back pain. The medical records indicate his back pain began two weeks earlier and was not due to a recent injury. Mr. Blatcher gave a history of prior back surgery for three ruptured discs. He was given medication and instructed to follow up with his doctor.
More than two months later, on October 15, 2009, Mr. Blatcher went to the emergency room at Interim LSU Public Hospital complaining of numbness in his right leg, which according to the medical records began two months earlier with no new trauma. The medical records indicate Mr. Blatcher explained he had prior back surgery in 2000 for ruptured discs that caused the same problem in his left leg. He was given medication and an MRI was ordered. He underwent the MRI three months later which showed an L4-L5 disc desiccation and broad based protrusion towards the right and a central disc protrusion at L5-Sl. Over the next several months, Mr. Blatcher made several more emergency room visits complaining of back pain. Each time, he was given medication and instructed to follow up with his primary care physician. Mr. Blatcher explained that he did not follow up with any doctors because he did not have health insurance to pay for the visits or treatment.
On December 8, 2010, Mr. Blatcher was seen by Dr. Rand Voorhies, a neurosurgeon, at defense counsel’s request. According to Dr. Voorhies, Mr. Blatcher indicated he strained his back on the job one year and three months earlier and, as a result, he has gone to the emergency room ten to 15 times seeking 15 treatment.[2] After reviewing the MRI done in January 2010, Dr. Voorhies believed Mr. Blatcher suffers from a right sided disc herniation at L4-L5. Dr. Voorhies recommended epidural steroid injections or surgery, if the injections did not provide symptomatic relief.
During trial, Mr. Blatcher explained that he has worked heavy manual labor his entire life. He testified that he had back surgery more than ten years earlier, but stated the surgery was successful and he has been able to work without a problem since then. Mr. Blatcher admitted to being involved in a motorcycle accident in 2000, and an incident where he was hit in the head with a baseball bat in 2009, but denied any of these accidents caused any back injury or pain. Mr. Blatcher further admitted that he received unemployment benefits after the accident at Valero. The record shows he received these benefits from March 4, 2010 through September 20, 2010.
At the conclusion of trial, the trial court gave the parties an opportunity to file post-trial memoranda. On November 16, 2011, the trial court rendered judgment against Mr. Blatcher finding he did not prove a work-related injury occurred on August 3, 2009. The trial court did not give reasons for its judgment. Mr. Blatcher filed this appeal claiming the trial court was manifestly erroneous in its conclusion. He specifically argues the trial court erred in failing to find the aggravation or acceleration of a pre-existing condition is a compensable disability under the Louisiana Workers’ Compensation Act (LWCA).
An employee seeking workers’ compensation benefits must prove “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031(A). The LWCA defines an accident as “an unexpected or unforeseen | (¡actual, identifiable, precipitous event hap *1186 pening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 28:1021(1). Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an “accident” within the meaning of La. R.S. 28:1021(1). Begue v. Crossover, Inc., 03-267 (La.App. 1 Cir. 11/21/03), 868 So.2d 100, 105.
The employee in a workers’ compensation action has the burden of proving a work-related accident by a preponderance of the evidence. Marange v. Custom Metal Fabricators, Inc., 11-2678 (La.7/2/12), 93 So.3d 1253, 1257. An employee may prove that an unwitnessed accident occurred in the course and scope of his employment by his testimony alone if the employee can prove: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Id. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Ardoin v. Firestone Polymers, L.L.C., 10-245 (La.1/19/11), 56 So.3d 215, 219, citing Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992).
In determining whether a worker has discharged his burden of proof, the fact-finder “should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony.” Marange, supra. The fact-finder’s determination as to whether the worker’s testimony is credible and whether the worker has discharged his 17burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. Marange, 93 So.3d at 1257-58. If the trial court’s findings are reasonable in light of the entirety of the record, the appellate court may not reverse. Consequently, when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Ricks v. Odyssey Health Care, 10-1099 (La.App. 5 Cir. 10/25/11), 77 So.3d 386, 389.
Upon review of the record, we find no manifest error in the trial court’s conclusion that Mr. Blatcher failed to sustain his burden of proof. Although Mr. Blatcher testified that his back “went out” when he was lifting a board over the railing on August 3, 2009, the record shows he never told either Mr. Louque, Mr. Sardina or the nurse that his back “went out” while he was performing his job duties. Mr. Lou-que’s statement, given on the day of the alleged accident, shows he was advised by the foreman that one of Brand’s employees was sitting by the warehouse complaining that his back was hurting. When Mr. Louque checked on Mr. Blatcher, Mr. Blatcher said his back had been hurting for two weeks and had worsened. Mr. Sardina’s statement, also given on the day of the alleged accident, likewise shows Mr. Blatcher stated his back had been hurting him for two weeks with no mention of any injury suffered while performing his job duties. According to Mr. Sardina, the on-site nurse determined Mr. Blatcher’s back pain was personal in nature and not work-related.
Additionally, Mr. Blatcher’s own statement, given on the day of the alleged accident, does not relate the worsening of his back pain to any particular activity. *1187 Rather, he stated, “My back [sic] been hurting for 2 weeks now and its [sic] getting worse 2 [sic] the point that I cant [sic] walk.” He further noted he had back | «surgery 12 years ago for ruptured discs “that sat on my nerves down my left leg,” and indicated “now its [sic] going down my right leg.”
Furthermore, the medical records in the first few months following the alleged accident do not mention any accident or trauma nor do they show that Mr. Blatcher related his back pain to lifting a board over a railing at work. The Ochsner medical records from August 4, 2009 show that Mr. Blatcher indicated his back pain started two weeks earlier. It specifically noted that there had been no recent injury. The LSU medical records from October 15, 2009 simply states Mr. Blatcher’s back pain began two months ago with no mention of a work-related injury. The first mention of any work-related injury appears in an Ochsner medical record dated April 23, 2010, which was eight months after the alleged accident and after Mr. Blatcher initiated this lawsuit.
The record also shows Mr. Blatcher has been less than truthful in the past. In particular, after his 2000 back surgery, he failed to note the surgery on a post-hire medical questionnaire. On the same questionnaire, he stated he had never had any back problems or an injury to his back despite his back surgery and a previous work-related back injury for which he sought medical treatment. Also, in obtaining unemployment benefits, Mr. Blatcher admitted he did not disclose his injury or disability, but rather might have told the agency he had been laid off, which he admitted was not the truth.
Accordingly, we cannot say the trial court was manifestly erroneous in finding Mr. Blatcher did not carry his burden of proving that his back pain resulted from a work-related accident.

\ ¡¡DECREE

For the foregoing reasons, the trial court’s judgment finding claimant, Drew Blatcher, failed to carry his burden of proving a work-related accident and denying him workers’ compensation benefits is affirmed. Each party is to bear his own costs for this appeal.

AFFIRMED

. Plaintiff erroneously referred to the alleged accident date as August 4, 2009. The record indicates plaintiffs alleged accident occurred on August 3, 2009; thus, all references to the accident date in this opinion will be to August 3, 2009.

. The record does not contain documentation for all these emergency room visits, but rather indicates Mr. Blatcher sought treatment in the emergency room on five occasions between his alleged accident and the time he saw Dr. Voorhies.