# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-1032


CHARLOTTE FRANKLIN

VERSUS

CALCASIEU PARISH SCHOOL BOARD


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – District 3
PARISH OF CALCASIEU, NO. 11-06964
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.


**AFFIRMED AND RENDERED.**


Christopher M. Trahan
Raggio, Cappel, Chozen & Berniard
1011 Lakeshore Drive, Suite 500
Lake Charles, LA 70601
(337) 436-9481
COUNSEL FOR DEFENDANT/APPELLANT:
    Calcasieu Parish School Board

**Mark Zimmerman**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, LA 70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Charlotte Franklin**

**PICKETT, Judge.**

The defendant employer appeals the award of workers' compensation indemnity and medical benefits to claimant whose credibility was challenged. For the following reasons, the awards are affirmed, and attorney fees are awarded for work performed on this appeal.

**FACTS**

Charlotte Franklin began working for the Calcasieu Parish School Board (CPSB) as a custodian at Sam Houston High School in 2005. She filed a Disputed Claim Form on September 19, 2011, alleging that she had injured her back on approximately June 2, 2011, while stripping floors at the school. Ms. Franklin stated she was injured when her legs slipped apart as she was operating a machine used to strip floors. She then explained that when her legs slipped, she held on to the stripping machine which caused her body to twist and that the twisting of her body caused pain in her lower back, buttocks, hips, underneath her ribs, and down the back of her legs.

CPSB denied Ms. Franklin's claim because her coworkers did not corroborate that she told them she injured her back at work and because no accident report was prepared. At trial, CPSB pointed out numerous inconsistencies between Ms. Franklin's deposition testimony and her trial testimony as to when and how she injured her back, who she told about her injury, and when and what she told them about her injury. Despite these inconsistencies, the workers' compensation judge (WCJ) concluded that Ms. Franklin carried her burden of proof and awarded her indemnity and medical benefits. The WCJ also determined, however, that CPSB reasonably controverted Ms. Franklin's claim and denied her

claims for penalties and attorney fees. CPSB appealed; Ms. Franklin answered the appeal, seeking an award of attorney fees for work performed on appeal.

**DISCUSSION**

CPSB assigns one error: the WCJ erred in concluding that Ms. Franklin carried her burden of proof of entitlement to workers' compensation benefits. In a workers' compensation action, the employee has the burden of proving by a preponderance of the evidence that she suffered "personal injury by accident arising out of and in the course of his employment." *Marange v. Custom Metal Fabricators, Inc.*, 11-2678, p. 2 (La. 7/2/12), 93 So.3d 1253, 1257; La.R.S. 23:1031(A). Accident is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

An employee can prove an unwitnessed accident with her testimony alone if "(1) no other evidence discredits or casts serious doubt upon [her] version of the accident; and (2) [her] testimony is corroborated by the circumstances following the alleged incident." *Marange*, 93 So.3d at 1257. The employee's testimony may be corroborated by the testimony of coworkers, spouses, or friends, or by medical evidence. *Ardoin v. Firestone Polymers, L.L.C.*, 10-245 (La. 1/19/11), 56 So.3d 215 (citing *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992)). The WCJ's determinations that an employee is credible and that she satisfied her burden of proof are factual determinations that should not be disturbed by a reviewing court unless the determinations are "clearly wrong . . . absent a showing of manifest error." *Bruno*, 593 So.2d at 361.

2

CPSB contends the WCJ's finding that Ms. Franklin carried her burden of proof was erroneous because (1) the WCJ did not make a specific finding as to Ms. Franklin's credibility and (2) Ms. Franklin's claim was contradicted by her coworkers' testimony. In cases such as this one, where the fact finder concludes that a party carried her burden of proof, a credibility determination can be implied from that finding. *Douglas v. Grey Wolf Drilling Co.*, 03-515 (La.App. 3 Cir. 11/5/03), 858 So.2d 830. Accordingly, CPSB's first contention lacks merit.

An appellate court cannot reverse a WCJ's factual findings that are based on a reasonable credibility evaluation if the record "furnishes [a] reasonable factual basis for the trial court's finding." *Marange*, 93 So.3d at 1258 (quoting *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973)). When, as here, "there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.*

Contrary to CPSB's claims, Ms. Franklin's claim that she was injured in the course and scope of her employment in June 2011 is corroborated by circumstances following her alleged accident. Misty King, Ms. Franklin's daughter, testified her mother related to her that "she got hurt working the big machine at work." Ms. King further testified that after her mother injured herself, she observed Ms. Franklin had problems rising from a seated position and that she could not do housework or her normal daily activities.

Shayne Matte, one of Ms. Franklin's coworkers, also corroborated her claim, though he initially seemed to contradict it. Counsel for CPSB asked Mr. Matte the following about whether she reported her accident to him:

> She has told us that she suffered an accident at work early in June of 2011. She's told us that she was working that day with you,

3

Jacob, and Linda Chesson. She's told us that she was using a floor stripping type machine when she -- when her legs split apart[,] and she said she pulled them back together. She's told us that when this happened, you and Jacob and Linda had gone down the hall somewhere to get water. She says that when you all got back as a group, the three of you all, that she immediately told all three of you that she had hurt herself while using the floor stripper. My question to you is: Did she ever report an accident of that type to you last summer?

Mr. Matte answered: "No, sir, not that I remember."

During examination by counsel for Ms. Franklin, Mr. Matte testified that Ms. Franklin "complain[ed] a lot" of her back hurting during the month of June. He further testified that all the employees were involved in stripping the floors and that the women used the stripping machine. This testimony contradicted the testimony of their coworker Linda Chesson and their supervisor, Bonnie Guillory.

The WCJ questioned Mr. Matte to clarify his testimony as to whether Ms. Franklin reported that she injured her back at work, asking: "You said you don't remember if Ms. Charlotte reported to you that she was hurt?" Mr. Matte responded: "I do remember her talking about her back being injured, but I don't remember her telling me that [it] was because of the stripping of the floor."

Ms. Franklin acknowledges that she has numerous health conditions, including diabetes mellitus II, fibromyalgia, and arthritis, and that she often complained of pain before injuring herself at CPSB, but she points to her medical treatment after her injury as additional corroboration of her claims. On June 2, 2011, she went to a nurse practitioner for a follow up of her diabetes. On that date, she complained "of severe low back pain, arthritis pain in hands and pain in general all over." She related that she had "been using heavy equipment at work this week[,] and [it] has really caused some pain." The Review of Systems portion of that office visit note states, in part: "Musco: Joint Pains - Leg Swelling-,

4

Myalgia-, Pain in hand-, Pain in lower back- No Arthritis Pain, Edema, Muscle cramps, Other, Pain in ankle, Pain in hip, Pain in knee, Pain in mid back, Pain in neck, Pain in shoulder, Pain in wrist, Weakness." After conducting a physical examination of Ms. Franklin's back and extremities, the nurse practitioner noted "lumbar tenderness" and "Joints severe pain with palpation over bilateral SI joints. Multiple moderate to severe tenderpoints upper and lower extremities."

Comparison of Ms. Franklin's previous visit on May 2, 2011, to her June 2, 2011 visit shows her physical condition had clearly declined during that one month interval. The May 2, 2011 office visit note reflects that Ms. Franklin did not complain of back pain, hand pain, or joint pain on that date and that examination of her spine showed her spinal curvature was normal and her spine and musculature were "non tender." Ms. Franklin's condition continued to worsen after her June 2, 2011 visit. Her nurse practitioner prescribed physical therapy which initially progressed well. Approximately three months after beginning therapy, however, Ms. Franklin began complaining to her physical therapist of soreness and pain and "catching along the bilateral SI joint." He suspected the increased pain and catching were related to her use of the treadmill which he believed caused sacral inflammation. The physical therapist recommended that Ms. Franklin not be allowed to return to work due to the heavy lifting requirements of her job.

Ms. Franklin was referred to an orthopedic surgeon who opined that she had a probable "HNP" (herniated nucleus pulposus) at L4-5 and recommended that she undergo an MRI and attend physical therapy. CPSB refused to pay the cost of this recommended treatment.

Our review of the record reveals no basis for the reversal of the WCJ's determination that Ms. Franklin carried her burden of proof. Evidence exists that

5

casts doubt upon Ms. Franklin's testimony regarding her accident, but other testimony and medical evidence corroborate her claims. Accordingly, the WCJ's judgment has not been shown to be clearly wrong or manifestly erroneous, and it must be affirmed.

Ms. Franklin answered the appeal, seeking an award of attorney fees for the work performed by her attorney on appeal. We award $2,500.00 for the work her attorney performed on appeal.

## DISPOSITION

The workers' compensation judge's judgment is affirmed, and Ms. Franklin is awarded attorney fees in the amount of $2,500.00 for work performed on appeal. All costs are assessed to Calcasieu Parish School Board.

**AFFIRMED AND RENDERED.**