MARC E. JOHNSON, Judge.
12Claimant, Richard Rostrop, appeals the trial court’s judgment denying his claim for workers’ compensation after it determined he did not sustain a compensable work-related injury. For the following reasons, we affirm.
Mr. Rostrop filed a Disputed Claim for Compensation on April 4, 2011 against his employer, Sharp Electric, Inc. (“Sharp”), and its insurer, Gray Insurance Company, claiming he suffered a work-related injury on December 28, 2010, and that Sharp had not paid any indemnity or medical benefits. After a trial on March 29, 2012, the workers’ compensation judge ruled in favor of defendants and dismissed Mr. Ros-trop’s workers’ compensation claims with prejudice. In her reasons for judgment, the trial judge explained that she did not find Mr. Rostrop credible and concluded there was no corroborating evidence that he hurt his arm, shoulder or back on December 23, 2010.

FACTS

At trial, Mr. Rostrop testified that he started working for Sharp in October 2010 as a journeyman wireman. On December 23, 2010, he was working with a | ¡¡crew at the Charity Hospital complex, where he had been working for several days. According to Mr. Rostrop, he and an apprentice, Dwight, were installing four-inch rigid conduits that weighed approximately 100 pounds between and above existing pipework. Mr. Rostrop explained that he was on a ladder when Dwight handed him a pipe that he had to lift and slide down the pipe rack. At some point, Mr. Rostrop felt a twinge or stabbing pain in his lower back and told Dwight that he had just hurt his back. Mr. Rostrop subsequently restricted himself from lifting and running the conduits for the remainder of the day.
Mr. Rostrop further testified that later that same day, he almost fell on top of a cart that flipped over in front of him. He stated that the cart incident was witnessed by another worker, Mark Weinhold. After the cart incident, Mr. Rostrop told Mark that he thought he had hurt his back. Mark testified that he did not witness any incident where claimant was injured on the job. When Sharp investigated the alleged incidents, Mark told Sharp that Mr. Ros-trop might have said his back was hurting that day, but added that everyone was complaining of back pain that day because of the nature of the work and the fact the conduits weighed 120 pounds.
Mr. Rostrop did not report the accident to his immediate supervisor, Esop Jordan, before going home that day because he thought he had just strained his muscles. However, after he went home, the pain in his lower back and shoulder increased. Mr. Rostrop was supposed to work the next day, Friday, but called into the shop around 6:20 a.m. and left a voicemail that he hurt his back and shoulder at work the day before. The voicemail was received by the office manager, Stephanie Richards, but she did not inform Mr. Jordan that day of Mr. Rostrop’s call.
Because Saturday was Christmas, Monday was the next work day. Mr. Rostrop was still hurting on Monday, so he called the shop again and left another 14message indicating he had injured himself on the job and would not be in. Ms. Richards again received the voicemail. This time, she informed both her boss and Mr. Jordan about Mr. Rostrop’s message. Mr. Jordan advised that he was unaware of any injury. He further indicated Mr. Ros-trop had been “flaky,” and he would lay him off. On Tuesday, Mr. Rostrop called into the shop again and spoke to the comptroller, Charlie Payne. The record does not indicate what Mr. Rostrop told Mr. *538 Payne, who was deceased at the time of trial, on that day.
Mr. Rostrop testified he went into the shop on Wednesday, told Mr. Payne that he hurt his back on the job at Charity, and asked Mr. Payne what the company wanted to do about it. According to Mr. Ros-trop, Mr. Payne told him to help out in the back of the shop, which consisted of checking orders and straightening shelves. On Thursday, Sharp had Mr. Rostrop driving a truck and making deliveries. Because Friday was New Year’s Eve, Mr. Ros-trop’s next work day was Monday. When he reported to work on Monday, he made a small delivery before Sharp terminated him, citing “lack of work.”
Mr. Rostrop testified his pain progressively worsened. He consulted with his union, which advised him to obtain an accident report from Sharp. Mr. Rostrop went to Sharp on January 11, 2011 to get an accident report, at which time Ms. Richards told him to write down what happened. Ms. Richards advised claimant that the information would be given to the insurance company.
Thereafter, Mr. Rostrop consulted an attorney, who referred him to Dr. Jerome Kurpel. Mr. Rostrop began treating with Dr. Kurpel on January 14, 2011. In May 2011, an MRI revealed bilateral foraminal narrowing with diffuse bulging and annular fibrosis at L5-S1 and a right paracen-tral annular fissure with some bulging at L4-5. Throughout Dr. Kurpel’s treatment, Mr. Rostrop’s disability status fluctuated between light duty and temporary total disability. Dr. Kurpel ^recommended epidural steroid injections, and referred Mr. Rostrop to an orthopedist.
In June 2011, Mr. Rostrop was seen by Dr. Ralph Katz for a second medical opinion at defendants’ request. Dr. Katz agreed with the recommendation for epidural steroid injections and light duty restrictions, but opined that Mr. Rostrop’s medical condition was usually caused by natural wear and tear of the body.
Mr. Rostrop began treating with Dr. Warren Bourgeois, an orthopedic surgeon, in December 2011. Dr. Bourgeois noted that claimant had neurological changes with decreased sensation in the right L-5 distribution. At the time of his deposition, which was taken approximately two weeks before trial, Dr. Bourgeois agreed with the recommendation for epidural steroid injections and opined that Mr. Rostrop could perform light duty work. Dr. Bourgeois did not believe Mr. Rostrop was at maximum medical improvement and stated that he was not ready for a functional capacity examination.

ISSUES

Claimant essentially argues two issues on appeal. First, he asserts the trial court’s judgment is defective because the trial court failed to consider the entire record before making its decision. Second, he argues that he made a prima facie case of a work-related disability and that the trial court committed manifest error in denying him benefits.

LAW & ANALYSIS

Defective Judgment

In deciding whether a claimant in a workers’ compensation action has proven his claimed disability, the trial court must consider the totality of the evidence, both medical and lay. Sevin v. Chevrolet, 08-1362 (La.App. 1 Cir. 4/30/09); 24 So.3d 879, 884.
| ^Claimant contends the trial judge failed to consider all the evidence before reaching her conclusion. Mr. Rostrop claims the trial judge reviewed her notes and *539 drafted -written reasons for her decision during lunch before hearing the testimony of Tolmas Sarduy, a warehouse manager for Sharp, and Stephanie Richards, the office manager, and before considering any of the exhibits introduced into evidence. The record does not support Mr. Rostrop’s claim.
At the beginning of trial, the parties presented a bench book of exhibits to the trial judge. Defendants had no objection to any of the exhibits offered by claimant which included claimant’s payroll and personnel records from Sharp; the medical records and depositions of Dr. Kurpel, Dr. Bourgeois, and Dr. Katz; and documentation relating to Sharp’s investigation of the alleged accident. Defendants offered many duplicative exhibits including the medical records and depositions of the doctors. Claimant objected to several of defendants’ exhibits, and the trial judge reserved her ruling until the exhibits were offered during trial. Most of the objected-to exhibits were not offered during trial or were ruled inadmissible during trial.
After the defense rested, the trial judge indicated she had used most of her lunch break going through the records submitted by the parties and was prepared to render a decision following a short break.[1] Thereafter, a recess was taken. When court resumed, the trial judge gave her ruling along with reasons for her ruling. Contrary to claimant’s assertion, there is no indication the trial judge did not take into consideration all the evidence, both lay and medical, before rendering her decision. Further, there is absolutely no evidence, as argued by claimant, that the “Administrative Judge stated, in open court to counsel, that she had made up her decision at lunch and had written reasons for her decision.” Rather, the record |7clearly shows the trial judge used her lunch break to review exhibits already submitted and agreed upon by the parties. The trial judge’s oral reasons for judgment demonstrate that she carefully considered all evidence presented. She specifically referred to the testimony of Ms. Richards, who claimant contends testified after lunch. As such, we find claimant’s assertion completely unfounded.

Entitlement to Benefits

An employee seeking ' workers’ compensation benefits must prove “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031(A). The Louisiana Workers’ Compensation Act (LWCA) defines an accident as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an “accident” within the meaning of La. R.S. 23:1021(1). Begue v. Crossover, Inc., 03-267 (La.App. 1 Cir. 11/21/03); 868 So.2d 100, 105.
The employee in a workers’ compensation action has the burden of proving a work-related accident by a preponderance of the evidence. Marange v. Custom Metal Fabricators, Inc., 11-2678 (La.7/2/12); 93 So.3d 1253, 1257. An employee may prove that an unwitnessed accident occurred in the course and scope of *540 his employment by his testimony alone if the employee can prove: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Id. Corroboration of the worker’s testimony may |sbe provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Ardoin v. Firestone Polymers, L.L.C., 10-245 (La.1/19/11); 56 So.3d 215, 219, citing Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992).
In determining whether a worker has discharged his burden of proof, the fact-finder “should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony.” Marange, supra. The fact-finder’s determination as to whether the worker’s testimony is credible and whether the worker has discharged his burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. Marange, 93 So.3d at 1257-58. If the trial court’s findings are reasonable in light of the entirety of the record, the appellate court may not reverse. Consequently, when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Ricks v. Odyssey Health Care, 10-1099 (La.App. 5 Cir. 10/25/11); 77 So.3d 386, 389.
Upon review of the record, we find no manifest error in the trial court’s conclusion that Mr. Rostrop failed to sustain his burden of proof. The trial court concluded that Mr. Rostrop, who it did not find credible, failed to prove he sustained a work-related injury. The trial court noted that Mr. Rostrop called the office on the day of the accident, December 23, 2010,-but did not report an accident or an injury. Instead, Mr. Rostrop and Ms. Richards both testified that Mr. Rostrop called the office that afternoon to inquire about a Christmas party. The trial court also questioned Mr. Rostrop’s claim that he did not know how to report an injury, despite the fact he had had a prior workers’ compensation claim. The trial court noted that claimant’s supervisor, Mr. Jordan, was at the jobsite all 19day, with the exception of lunch, and claimant could have and should have reported the accident that day.
It also observed that although Mr. Ros-trop stated he told his co-worker, Dwight, that he hurt his back, Dwight did not testify. Also, his co-worker Mark, who claimant said witnessed him almost fall over the cart and whom he told he hurt his back, testified that he never saw an accident and that he did not recall claimant saying he was hurt.
The trial court further pointed out several inconsistencies and contradictions regarding Mr. Rostrop’s testimony. First, it noted that Mr. Rostrop testified that he did not call his supervisor, Mr. Jordan, to tell him he was not coming into work because he did not have his phone number. However, Mr. Jordan testified that claimant had called him the Monday before the alleged accident to get directions to the jobsite. Next, the trial court observed that Mr. Rostrop stated he did not lift anything when making deliveries after his accident. But, Mr. Jordan testified that Mr. Rostrop helped unload a heavy junction box from the back of the pickup truck by lifting it approximately eight inches. The trial court further questioned Mr. Rostrop’s credibility by referring to records from claimant’s prior employment with Sara Lee, which indicated Mr. Ros-trop was terminated because of attendance and tardiness. However, claimant testi *541 fied he quit his employment with Sara Lee and denied that he had been terminated.
As discussed above, a claimant can meet his burden of proving a work-related accident by his own uncontradicted testimony “absent circumstances casting suspicion on the reliability of this testimony.” Ricks v. Odyssey Health Care, 10-1099 (La.App. 5 Cir. 10/25/11); 77 So.3d 386, 388. The record shows several inconsistencies in and contradictions to Mr. Rostrop’s testimony so as to cast suspicion on the reliability of his testimony. Thus, we cannot say the trial |incourt was manifestly erroneous in finding Mr. Rostrop did not carry his burden of proving that his back pain resulted from a work-related accident.

DECREE

For the foregoing reasons, the trial court’s judgment finding claimant, Richard Rostrop, failed to carry his burden of proving a work-related accident and denying him workers’ compensation benefits is affirmed. Each party is to bear his own costs for this appeal.

AFFIRMED

. The record does not indicate at what point lunch was taken during the trial.