# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## WCA 14-555

EARL J. THIBODEAUX

VERSUS

CARROLL'S TOWING, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 12-02212
ADAM C. JOHNSON, WORKERS COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Eric J. Waltner**
**Allen & Gooch, a Law Corporation**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **D.C. Rent to Own d/b/a Everbody Rides**

**Melanie J. Forbes**
**Attorney at Law**
**5615 Corporate Blvd., Suite 700**
**Baton Rouge, LA 70808**
**(225) 201-8020**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Carroll's Towing**

**C. Roan Evans**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Earl J. Thibodeaux**

**PICKETT, Judge.**

A workers' compensation claimant appeals the dismissal of his claims for indemnity and medical benefits and penalties and attorney fees. We affirm.

**FACTS**

In March 2012, Earl J. Thibodeaux was employed by Carroll's Towing as a tow truck operator. He filed a Form 1008 Disputed Claim for Compensation, seeking indemnity and medical benefits from Carroll's Towing for an injury to his right knee. He alleged that the injury occurred on March 21, 2012, when he was hooking a car to his tow truck. Mr. Thibodeaux amended his claim to add D.C. RENT TO OWN/D.C. RENT TO OWN LLC D/B/A EVERYBODY RIDES as a defendant after that entity filed an answer to his claim as the payor for Carroll's Towing.

Trial was held October 21, 2013. Mr. Thibodeaux and two employees of Carroll's Towing, Michelle Patin and Sandra Domingue, testified at trial. Mr. Thibodeaux submitted the deposition of Stephanie Lea and medical records of Lafayette General Medical Center (LGMC), Dr. Andre Viator/SWLA Center for Health Services (SWLA), and Dr. Michel Heard in support of his claim.

Mr. Thibodeaux testified that on the evening of March 21, 2012, he had to drive to from Lafayette to Alexandria and tow a Chevrolet Impala back to Lafayette. He described injuring his right knee as follows: "Whenever I went down to hook the chains on the driver's side, I felt something stab me in the knee. I checked, there was nothing on the ground." Mr. Thibodeaux explained that at the time, he did not believe the knee pain was anything serious, so he went home and slept. He further testified that when he awoke the next morning, his knee was

swollen the size of a basketball and that he knew he needed to report the incident to Ms. Patin, his supervisor at Carroll's Towing. According to Mr. Thibodeaux, he texted Ms. Patin that morning, and she called him after she got to the office. Mr. Thibodeaux then testified that he explained to Ms. Patin how he injured his right knee the night before and that she told him it did not matter if he needed to go to the hospital.

Mr. Thibodeaux testified that he then went to the office where he showed his right knee to Ms. Patin and Ms. Domingue and explained to them exactly how he injured it the night before when preparing to hook the Chevrolet Impala to his truck. Mr. Thibodeaux stated that he was transported to LGMC by Stephanie Lea, another tow truck driver he was training.

Mr. Thibodeaux's history of injury was recorded on March 22, 2012, by LGMC emergency room personnel as: "c/o right knee pain that started last night, denies injury or trauma. Swelling noted to right knee, pt ambulates with a limp." Four days later on March 26, 2012, SWLA recorded Mr. Thibodeaux's history as: "patient state [sic] that he [sic] here for right knee pain x6 days. No trauma, drives toe [sic] trucks, nothing out of ordinary. Knee swelling the next day."

Ms. Patin testified that at the time Mr. Thibodeaux was injured she was employed as a manager at Carroll's Towing, but she quit in early summer of 2012 to be home with her children. Ms. Patin further testified that the morning of March 22, 2012, Mr. Thibodeaux went into the office and stated that he needed to go to the doctor because he hurt his knee. Ms. Patin explained that she asked him what happened, and he replied, "he didn't know." She denied that Mr. Thibodeaux gave any details as to how he injured his knee and stated that he told her he injured his

knee while kneeling on it. She further denied that Mr. Thibodeaux texted or called her that morning before arriving at the office and told her that he injured himself.

Ms. Patin next testified that later that morning the LGMC billing office contacted her and asked if Carroll's Towing would be responsible for Mr. Thibodeaux's medical treatment. Ms. Patin informed the caller that Carroll's Towing would not be responsible because it was not work related. Ms. Patin then testified that the caller stated, "That's what he said first, but he said that y'all were going to be paying for the bill." Ms. Patin picked Mr. Thibodeaux up from the hospital and drove him home. She testified that during the ride, Mr. Thibodeaux did not relate his knee injury to work.

Ms. Patin was questioned about other truck drivers employed by Carroll's Towing at the time of Mr. Thibodeaux's injury. She testified that at the time, Carroll's Towing had two tow truck drivers other than Mr. Thibodeaux: Richard Wingate and Stephanie Lea. Ms. Patin explained that Ms. Lea was in training at that time but was fired because she was not quick enough at the work.

Ms. Domingue testified that she is a dispatcher, secretary, and office manager for Carroll's Towing and had worked in the same capacities in March 2012. She related that on the morning of March 22, 2012, Mr. Thibodeaux went into the office and reported that he had injured himself. In response to his statement, Ms. Patin asked him how he injured himself, and he answered that he did not know. When asked directly, Ms. Domingue denied that Mr. Thibodeaux explained or related any information as to how he injured him. Ms. Domingue next testified that Mr. Thibodeaux made arrangements for Stephanie Lea, another employee of Carroll's Towing, to transport him to the hospital and that she did not see him again.

Ms. Lea testified in her deposition that on March 21, 2012, Mr. Thibodeaux was training her as a tow truck driver for Carroll's Towing. She further testified that Mr. Thibodeaux called her that evening when he was returning to Lafayette after picking up the Chevrolet Impala in Alexandria and told her that he hurt himself or pulled a muscle "on the repo." The next morning Ms. Lea reported to work and was in the office when Ms. Patin asked her to take Earl to the hospital. Ms. Lea explained that she asked, "For what?" and Ms. Patin stated that Earl hurt himself. Ms. Lea also testified that Mr. Thibodeaux asked Ms. Patin if workers' compensation would pay for the hospital and that Ms. Patin stated she would have to ask the owner of Carroll's Towing. According to Ms. Lea, during the discussion, she interjected that Mr. Thibodeaux got hurt at work and asked why workers' compensation would not pay for the charges. Ms. Lea also testified that while in the office that morning before she took him to the hospital, she heard Mr. Thibodeaux tell Ms. Patin and/or Ms. Domingue that he hurt himself at work. Ms. Lea then related that she was laid off that day because there was no driver to train her.

After the trial, the workers' compensation judge (WCJ) took the matter under advisement. In early November 2012, the WCJ issued an oral ruling on the record in which he concluded: (1) Mr. Thibodeaux was not a credible witness; (2) Ms. Patin and Ms. Domingue were credible witnesses; (3) Ms. Patin and Ms. Domingue's testimonies and the medical records of LGMC and SWLA contradicted Mr. Thibodeaux's claim that he injured his right knee on the evening of March 21, 2012, while in the course and scope of his work. Those findings led the WCJ to conclude that Mr. Thibodeaux had not carried his burden of proving that he was injured in the course and scope of his employment, and the WCJ

dismissed Mr. Thibodeaux's claims at his cost. A judgment dismissing Mr. Thibodeaux's claims was signed, and he appealed that judgment.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Thibodeaux assigns the following four errors with the WCJ's conclusions:

1.	The trial court committed manifest error and was clearly wrong in not finding that claimant suffered a work accident on March 21, 2012.

2.	The trial court committed manifest error and was clearly wrong in disregarding claimant's presented medical evidence in the form of the MRI and Dr. Michael Heard's report.

3.	The trial court committed manifest error and was clearly wrong in disregarding the corroborative testimony of claimant's co-worker, Stephanie Lea.

4.	The trial court committed manifest error and was clearly wrong by not applying the correct evidentiary standard of preponderance of the evidence.

## STANDARD OF REVIEW

In *Marange v. Custom Metal Fabricators, Inc.*, 11-2678, p. 6 (La. 7/2/12), 93 So.3d 1253, 1257-58 (per curiam) (citations omitted), the supreme court outlined a workers' compensation claimant's burden of proof for an unwitnessed accident as originally set forth in *Bruno v. Harbert International, Inc.*, 593 So.2d 357 (La.1992):

> The employee in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. An employee may prove by his or her testimony alone that an unwitnessed accident occurred in the course and scope of employment, if the employee can satisfy two elements: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. In deciding whether the plaintiff has discharged his or her burden of proof, the fact-finder should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the

5

reliability of this testimony." [*Id.* at 361.] The fact-finder's determinations as to whether the worker's testimony is credible, and whether the worker has discharged his or her burden of proof, are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.

At the heart of Mr. Thibodeaux's assignments of error is the WCJ's failure to consider the deposition testimony of Ms. Lea and medical evidence in the form of an MRI of his right knee and the opinion of Dr. Michel Heard, an orthopedic surgeon. We address the assignments of error pertaining to these issues first.

***MRI and Dr. Heard's Opinion***

Mr. Thibodeaux contends the WCJ erred in disregarding (1) the injury to his right knee that is shown on an MRI taken April 4, 2012, and (2) Dr. Heard's opinion that the right knee injury occurred March 21, 2012, when Mr. Thibodeaux prepared to hook a car to his tow truck. This argument fails to consider two important facts. First, an MRI shows whether or not damage is present; it does not show when any damage it may reveal occurred or how it occurred. Second, Dr. Heard's opinion was based on Mr. Thibodeaux's history that he injured his knee March 21, 2012, as he prepared to hook a car to his tow truck. The history of injury documented in Mr. Thibodeaux's SWLA and/or LGMC medical records contradict Dr. Heard's opinion, and there is no evidence that Dr. Heard reviewed those medical records or was made aware of the discrepancies between the histories related to him by Mr. Thibodeaux and the histories Mr. Thibodeaux related to those health care providers. For these reasons, the WCJ did not err in failing to consider the MRI and/or Dr. Heard's testimony as corroborating evidence of Mr. Thibodeaux's claim.

***Stephanie Lea's Deposition***

Mr. Thibodeaux urges that the WCJ erred in not considering Ms. Lea's deposition testimony that on the morning of March 22, 2012, she heard Mr. Thibodeaux tell Ms. Patin and Ms. Domingue that he had injured his knee the evening before when preparing to hook the car to be towed to his truck. Only Mr. Thibodeaux, Ms. Patin, and Ms. Domingue testified in court. The WCJ was in a position to judge who was credible and who was not credible. Moreover, the testimonies of Ms. Patin and Ms. Domingue were corroborated by Mr. Thibodeaux's SWLA and LGMC medical records.

Mr. Thibodeaux's cell phone records also corroborate Ms. Patin's testimony that Mr. Thibodeaux did not call her and report that he was injured on March 21, 2012, while working as he claims. Mr. Thibodeaux testified that he called Ms. Patin the evening of March 21/morning of March 22 and reported his injury to her. The telephone number he identified on his telephone bill as Ms. Patin's, 347-2048, was not her number, but the number of Mr. Thibodeaux's former fellow employee, Richard Wingate. Ms. Patin testified that her telephone number is 337-230-0674. Mr. Wingate was neither called to testify at trial nor was he deposed before trial. For these reasons, we do not find the WCJ's failure to address Ms. Lea's deposition testimony or find that her testimony corroborated Mr. Thibodeaux's claims was clearly wrong.

***WCJ's Failure to Find a Work Accident Occurred***

Mr. Thibodeaux had to prove his claim that he injured himself while in the course and scope of his work for Carroll's Towing by a preponderance of the evidence. Because his alleged accident was unwitnessed, he could only carry his burden of proof if: "(1) no other evidence discredits or casts serious doubt upon

his version of the incident;" and (2) his "testimony is corroborated by the circumstances following the alleged incident." *Marange*, 93 So.3d at 1257. Mr. Thibodeaux failed to satisfy both of these requirements. The testimonies of Ms. Patin and Ms. Domingue and his SWLA and LGMC medical records cast serious doubt on Mr. Thibodeaux's version of the alleged incident, rather than corroborating his claim. Additionally, under these circumstances, Ms. Lea's deposition testimony was insufficient to outweigh the doubt cast on Mr. Thibodeaux's claim. Lastly, for the reasons discussed above, neither the MRI of his knee nor Dr. Heard's opinion corroborate his claim.

### *Claims for Penalties and Interest*

Mr. Thibodeaux asserted a claim for penalties and interest for the defendants' failure to pay him indemnity and medical benefits. Having determined that the WCJ did not err in finding Mr. Thibodeaux failed to satisfy his burden of proof, we need not address these claims.

### DISPOSITION

The judgment of the WCJ is affirmed. All costs are assessed to Earl J. Thibodeaux.

**AFFIRMED.**

8