MAX N. TOBIAS, JR., Judge.
h Jeffery Mills, tile plaintiff/appellant herein, appeals from a judgment.rendered by the Office of Workers’ Compensation (“OWC”) that granted a summary judgment filed by his employer and its workers’ compensation insurer. For the reasons that follow, we reverse the summary judgment and remand the matter to the OWC for further proceedings.
Mr. Mills began working for Boasso American Corporation (“Boasso”) in 1988 as a maintenance man/machine operator. He first injured his lower back in 2000 while helping to move a 55-gallon drum. He saw the company doctor and was treated for six to eight weeks. The diagnosis at the time was a compressed disc. Mr. Mills returned to work although he was still experiencing some “dull pain;” the *816 doctor said he could:return >on a.full-time basis. ■
Mr. Mills admits that he had been having problems with his lower back off and on in the years since the 2000 accident. "Wien the • pain' became debilitating, he would take a few days off and return to work at Boasso once the pain had" subsided.
Un late July 2008, Mr. Mills saw Alain F. Cracco, M.D., a neurologist with the Department of Neurology at the LSU Health Services Center, for a flare up of his lower back pain. He treated with Dr. Cracco for about a month; ■ however, the medicals records are unclear as to exactly what treatment-was prescribed or if Mr. Mills missed any work.
Mr. Mills returned to Dr. Cracco in'August 2010. On 18 August 2010, a lumbar MRI was performed. It indicated bulging discs at both the L5-S1 and L4-L5 levels, with the latter being a bit worse. On 7 October 2010, Mr. Mills was seen by John C. Steck, M.D., also a neurologist and Dr. Cracco’s colleague. , Dr. Steck thought that the August MRI showed a herniation on- the right- at the L4-L5 level, but that the images were unclear. He also noted bulging disc at the L5-S1 level-
On 12 October 2010, Mr. Mills saw Stephen A. Rynick, M.D., for a second opinion. Dr. Rynick interpreted the August MRI as showing a large disc herniation to the right, this time at the L5-S1 level; this was not observed by the two prior doctors. Dr. Rynick recommended a' series of lumbar epidural steroid injections, which he administered on 18 October 2010 and on 1 November 2010. After the second injection, the company doctor told Mr. Mills to take a week off, -which he did. Mr; Mills then returned to- his regular duties -until the accident on 30 November 2010. At no time prior to 30 November 2010 was Mr. Mills, informed that he was disabled and should not work.
laOn the morning of 30 November 2010, Mr. Mills reported for work. He was lifting a box of aerosol cans from the seat of a golf cart when he felt a “pop” in his lower back with shooting pains down both his legs. At his supervisor’s insistence, Mr. Mills .was taken by ambulance to West Jefferson Medical Center in Marrero, Louisiana, arriving at 9:18 a.m. Mr. Mills was given pain medication and underwent a lumbar MRI. It now indicated that he had a “broad-based right paracentral extruded disc” at the L4-L5 level that “markedly deforms thecal sac centrally and to the right, of the midline with impingement on the intraspinal right L5 nerve root.” On ,10 December 2010, Dr. Steck performed a microdiscectomy on the right side, of the L4-L5 level. Mr. Mills has not. returned to work - since the accident., He reported that he takes pain medication on a daily basis.
Boasso’s workers’ compensation insurer, Zurich American Insurance Company (“Zurich”), began paying workers’ compensation benefits to Mr. Mills shortly after the 30 November accident; benefits were terminated in January 2013.
In May 2011, Mr. Mills filed a claim for social security disability payments with the Social Security Administration (“SSA”). On 30 June 2012, Mr. Mills was notified that he was entitled to monthly disability benefits, with the SSA finding' that he became disabled “under our rules” on 12 October 2010.
While Zurich was paying benefits, it sent Mr. Mills to Najeeb M. Thomas, M.D., a neurologist, for a second medical opinion. Dr. Thomas’ report states that Mr. Mills was injured • in October ‘2010. While some of his pain had decreased-, Mr. -Mills reported that he was still having pain in ‘ his -buttock -and down his leg. Dr. *817 I/Thomas recommended that a myelogram be performed to make sure that a compression on the nerve root was not missed by the most recent MRI. If the myelogram failed to show any additional compressions, Dr. Thomas stated that he would consider Mr. Mills to be at maximum medical improvement.
Mr. Mills filed' a disputed claim for compensation with the OWO on 5 April 2018, seeking supplemental earnings benefits (“SEB”), as well as the payment of medical expenses, attorney’s fees, penalties, costs, and interest. Boasso and Zurich (hereinafter “the defendants”), answered the disputed claim stating that benefits were terminated when Mr. Mills refused to work at a job offered to him that his own physician had released him to perform.[1]
On 8 December 2014, Mr. Mills filed an amended petition seeking SEB benefits, mileage reimbursements, and authorization to treat with a doctor for, pain management. He also sought penalties, attorney’s fees, interest, and costs,
The defendants filed a. motion for summary judgment on 15 January 2015. The basis of the motion was that Mr. Mills could not prove that he had a -disabling aggravation of a prior, asymptomatic condition as the result Of an on-the-job injury on 30 November 2010. In addition, the defendants maintain that Mr. Mills’ disability, if any; stemmed from an accident that occurred on 12 October -2010. Because no claim for workers’ compensation was timely filed after the 12 October 2010 alleged incident, his claim for compensation was prescribed.
liiMr. Mills opposed the motion arguing that it was the 30 November 2010 on-the-job accident that , significantly aggravated his pre-existing back condition and caused his disability. He specifically denied that an accident and/or injury took place on 12 October 2010.
The OWO granted the defendants’ motion for summary judgment, finding that Mr. Mills was disabled as of 12 October 2010. In doing so, the OWO relied on the SSA’s determination that Mr. Mills became disabled- on that October date and medical records' from' Dr. Steck dated 7 October 2010 that the August 2010 MRI indicated a herniation on the right of L4-L5 level, although it is unclear. Dr. Steck ■also wrote that Mr. Mills’ symptoms were classic and he recommended one or two lumbar injections in order to treat his condition non-surgically.[2]
This timely appeal followed.
The standard of review of a trial court’s ruling granting a motion for summary judgment, pursuant to La. C.C.P. arts. 966 and 967, and the jurisprudence, is well-settled. . As this court has noted, it can be summarized ass follows:
, Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to' determine whether summary judgment is appropriate. This standard of review requires the appellate court to look- at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they' show that no genuine issue as to a material fact exists, and that the' mover is entitled to judgment as a matter of law.
i ⅜ * *
co. The OWC was-mistaken, This-was actually a report written.by Dr. Steck to Dr. Cracco.
*818 The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions; Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party .moving for summary judgment will;not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party’s claim, but rather-to point out .to the court that an absence of factual support exists for one or. more elements essential to the adverse party’s claim; Thereafter, if the adverse party fails to produce factual support sufficient to establish that.it will be able to satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations' or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue. ’
Mandina, Inc. v. O’Brien, 13-0085, pp. 8-9 (La.App. 4 Cir. 7/31/13), 156 So.3d 99, 104-105 (collecting cases).
An, employee seeking, workers’ compensation benefits must prove “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031 A. The Louisiana Workers’ Compensation Act defines an accident as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). “Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity,.'even if such event occurs during the performance of- customary or routine work activities, the | .¡employee has established an ‘accident’ within .the. meaning of La. R.S, 23:1021(1).” Rostrop v. Gray Ins. Co., 12-0554, p. 7 (La.App. 5 Cir. 4/10/13), 115 So.3d 535, 539 (citing Begue v. Crossover, Inc., 03-0267, p. 8 (La.App. 1 Cir.’ 11/21/03); 868 So.2d 100,105).
Regarding a workers’ compensation claimant’s burden of proving an aggravation of a preexisting injury, this Court stated in Merrill v. Greyhound Lines, Inc., 10-0834, pp. 6-7 (La.App. 4 Cir. 6/29/11), 70 So.3d 991, 995:
Even if the. claimant suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the accident aggravated,' accelerated, or combined with the pre-existing condition to produce an injury resulting in a compensable disability. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689, 691. The claimant may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before .the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselve?- thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the aeci-dent and the onset of the disabling symptoms. Walton v, Normandy Village Homes Association, Inc., 475 So.2d 320, 324-25 (La.1986).
We find that, the - OWC erred by granting the motion for summary judgment. First, while the SSA may have determined that Mr. Mills was disabled as of 12 October 2010, Mr. Mills was not informed of this decision until' June 2012.
*819 And the fact that his MRI may have shown a herniated disc is of no moment. What is relevant is that Mr. Mills returned to work. Boasso was well aware of Mr. Mills’ continuing back issues; he first injured his lower back in 2000 while in its employ. Further, it was the company doctor who advised him to take a week off after his 18second lumbar injection on 1 November 2010. No dispute exists that an incident occurred on 30 November 2010, one that necessitated Mr. Mills being taken to the hospital by ambulance.
We find, however, a question of fact as to whethér anything occurred on 12 October 2010. Notwithstanding the 2011 doctor’s report, Mr. Mills’ answers to the defendants’ interrogatories in which’ he stated that he suffered an accident on 12 October, and the SSA’s determination of disability as of that date, the medical records fail to support that Mr. Mills was actually “disabled” on 12 October 2010 or that any accident and/or injury occurred on that date.
The record reflects that Mr. Mills was seen by Dr. Rynick on 12 October 2010 who believed he saw a herniation on the August 2010 MRI. No mention of an accident and/or- injury is noted in the report. The medical records in evidence do, however, clearly establish that an accident/injury occurred on 30 November 2010 and that ten days later, Mr. Mills - underwent surgery.. Until the 30 November 2010. accident, Mr. Mills was always able to return to work at his regular position without restrictions; after the accident, he was not.
Based on the foregoing, we reverse the summary judgment granted by the OWC and remand this matter for further proceedings consistent with this opinion.

REVERSED; REMANDED.

. In the transcript of the 20 February 2015 hearing, the OWC actually states that the 7 October'2010 report was written by Dn Crac-