GUIDRY, Justice.*
|, The central issue in this workers’ compensation case involving an “unwitnessed accident” is whether the Office of Workers’ Compensation hearing officer was manifestly erroneous or clearly wrong in finding the plaintiff had sustained a work-related injury. The appellate court found no such error and affirmed the hearing officer’s factual determination that the plaintiff had suffered a disabling injury from a work-related accident. We granted the employer’s writ application to review the correctness of the appellate court’s judgment and its application of Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992), and the manifest error standard of review. For the reasons that follow, we conclude the court of appeal erred in affirming the hearing officer’s factual finding, and now reverse. Our review of the record evidence convinces us the hearing officer manifestly erred in finding the plaintiff carried his burden of establishing a work-related accident.
*217 FACTS
The plaintiff, Kenneth Ardoin, first began employment with the defendant, Firestone Polymers, Inc., in 1992, commencing as a laborer and eventually becoming a batch lab analyst. This position required the plaintiff to collect samples |?and then test them in a laboratory. To do so, the plaintiff rode a bicycle to the reactor unit, climbed twenty-eight stairs, collected the samples, climbed down the stairs, and returned by bicycle to the lab. The plaintiff claimed that, sometime in June 2006 while riding his bicycle to collect a sample, he almost fell off the bicycle, but to avoid falling, he threw his right leg down and twisted the knee. Although he felt pain at the time, he said he ignored it and continued working.
At trial, the plaintiff admitted he did not report the accident to Firestone until some eighteen months later. He explained that he had been suspended for three days without pay for reporting a hand injury in 2001. He claimed there was an unspoken word at Firestone that if an employee reported an accident, he or she would be reprimanded.
On June 26, 2006, the plaintiff consulted his family physician, Dr. Craig Broussard, complaining of knee pain. Dr. Broussard’s report indicated the plaintiff denied any falls or injuries. The plaintiff testified at trial that he either forgot to mention the accident to Dr. Broussard or was in too much pain to remember to do so. On July 14, 2006, the plaintiff was referred to Dr. Alan Hinton, an orthopedic surgeon. Dr. Hinton’s report states the plaintiff sustained a twisting injury to his right knee. The plaintiff testified he reported a “twisting injury” and “difficulty with [his] right knee” to Dr. Hinton, but he admitted on cross-examination that he had previously testified at his deposition that it was Dr. Hinton who had informed him the MRI revealed a twisting injury. Dr. Hinton diagnosed the plaintiff with a medial men-iscal tear to the right knee, and recommended surgery.
Following surgery, the plaintiff was released for full duty and returned to work on October 30, 2006. He successfully passed the fit-for-duty or “work hardening” tests specific to his position, including climbing stairs. Eventually, the plaintiff began experiencing pain in his right knee, along with pain in his left knee |sbecause he was favoring his right knee. He returned to Dr. Hinton on March 12, 2007, and subsequently underwent another MRI and a bone scan of both knees. Dr. Hinton ultimately diagnosed the plaintiff with degenerative joint disease.
The plaintiffs attorney sent a letter to Dr. Hinton seeking his comments on the cause and nature of the plaintiffs knee condition. Dr. Hinton responded with a letter, dated August 12, 2008, outlining as follows:
Mr. Ardoin is a patient ... who has sustained an on the job injury to his right knee. He sustained a medial men-iscal injury. This was treated with surgical arthroscopy. Unfortunately, he has had persistent pain and problems with the result in formation of arthritis secondary to his work injury. He has pain in his right knee. I think that his injury to the left knee [sic] possibly aggravated his right knee [sic] although causation is difficult to establish. Mr. Ardoin’s right knee is very symptomatic resulting in disability. This was noted on March 7, 2007. His current restrictions are avoidance of ladders, no scaffolding working, no type of work that could result in a potential fall and he is precluded from prolonged stair climbing. His prognosis at this time is guarded. These are permanent restrictions.
*218 The plaintiffs request for a light-duty assignment was declined, because Firestone does not offer such positions for non-work-related injuries, according to Jayde Butler, a senior occupational health nurse for Firestone. Commencing in March 2007, the plaintiff was receiving payments under Firestone’s Accident and Sickness (hereinafter “A & S”) program, totaling 80% of his salary. According to Butler, the plaintiff never indicated on the A & S forms he was required to complete that the accident was work-related. It was not until late 2007 that the plaintiff first indicated on the form that he was “not sure” if the injury was work-related; however, when questioned by Butler as to what he meant, the plaintiff explained that he was not sure what was going on with his knees. Butler testified she recommended the plaintiff be tested for rheumatoid arthritis. The plaintiff was tested, but the results were negative. Ultimately on December 6, 2007, the plaintiff filed a disputed claim for workers’ compensation benefits alleging a work-related | ¿injury.
The hearing officer for the Office of Workers’ Compensation found the plaintiff had established that a disabling injury occurred as the result of a work-related accident. The hearing officer recognized that the “excessive time” it took for the plaintiff to report the accident “require[s] some explanation.” The hearing officer then contrasted Firestone’s argument that the plaintiffs testimony was self-serving and amounted to a fabrication, against the plaintiffs assertion that he initially declined to report the accident only out of fear of being reprimanded. In the hearing officer’s view, the circumstances surrounding the prior accident involving the hand and the consequences for reporting it were in dispute. Acknowledging that the plaintiffs excuse for not reporting the accident timely “raises questions,” the hearing officer nevertheless found the plaintiff had met his burden of proving a work-related accident, noting that “few workers’ compensation claims are characterized by rigid, unwavering adherence to an ideal chronology which could produce, at a glance, an accurate picture of exactly what happened and why.” The hearing officer further found the claim had not prescribed and awarded penalties and attorney fees for Firestone’s failure to investigate the claim before denying compensation benefits.
The court of appeal affirmed the hearing officer’s judgment in part, and reversed the award of penalties and attorney fees. Ardoin v. Firestone Polymers, Inc., 09-0530 (La.App. 3 Cir. 12/30/09), 30 So.3d 177. We granted Firestone’s writ application to review the court of appeal’s judgment with regard to the proof of the work-related accident. 10-0245 (La.4/16/10), 31 So.2d 1062.
LAW
A worker in a compensation action must establish “personal injury by accident arising out of and in the course of his employment.” La.Rev.Stat. | a23:1031(A). An accident is “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La.Rev.Stat. 23:1021(1). As in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991); Prim v. City of Shreveport, 297 So.2d 421 (La.1974). An employee may prove by his or her testimony alone that an unwitnessed accident occurred in the course and scope of employment if the employee can satisfy two elements: (1) no other evidence dis *219 credits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged accident. Bruno v. Harbert International, Inc., supra, 593 So.2d at 361 (citing West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Civil Law Treatise, Workers’ Compensation, Section 253 (2d Ed.1980)). As we noted in Bruno, corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Id. (citing West, Nelson, and Malone and Johnson).
In Bruno, we cautioned that, in deciding whether the plaintiff-worker has discharged his or her burden of proof, the fact-finder “should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent ‘circumstances casting suspicion on the reliability of this testimony.’ ” 593 So.2d at 361 (quoting West, 371 So.2d at 1147, and citing Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987)). The fact-finder’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his burden of proof are, most certainly, factual determinations that should not be | (¡disturbed on appellate review unless clearly wrong or manifestly erroneous. Id. (citing Gonzales v. Babco Farm, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988)).
It is well-settled that a reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). In Arcen-eaux, we set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and (2) the appellate court must further determine that the record establishes the finding is not clearly wrong or manifestly erroneous. Arceneaux, 365 So.2d at 1333; see also Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993); Sistler, 558 So.2d at 1112.
In this case, the hearing officer’s factual finding that the plaintiff succeeded in establishing the existence of a work-related accident was based on his determination with regard to the plaintiffs credibility. As we pointed out in Bruno, 593 So.2d at 361, this court in Rosell v. ESCO explained the concept of “clearly wrong” or “manifestly erroneous” with regard to credibility determinations as follows:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict \nthe witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *220 But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d at 844-45 (emphasis added and citations omitted).
DISCUSSION
The appellate court below acknowledged that it could find “manifest error in a credibility determination where ‘objective evidence so contradicts an employee’s testimony, or testimony is so internally inconsistent or implausible on its face that a reasonable factfinder would discredit the story.’ ” Ardoin, 09-530, p. 5, 30 So.3d at 181 (citing Butterfield v. Turner Indus., 06-1098, p. 4 (La.App. 3 Cir. 2/7/07), 951 So.2d 476, 479, writ denied, 07-507 (La.4/27/07), 955 So.2d 692). However, the court concluded the plaintiffs testimony was not so internally inconsistent, nor did the objective evidence so contradict his account of the events, as to find manifest error in the hearing officer’s determination that a bicycle accident had occurred. Upon our review of the record, and keeping in mind the correct standard of review, we find the court of appeal erred in not finding manifest error in the hearing officer’s factual determination that a work-related accident had been established by a preponderance of the evidence.
The hearing officer in this unwitnessed accident case was called upon to determine whether there was no other evidence presented that either discredited or cast serious doubt on the plaintiffs account of the accident and that there existed other evidence that corroborated the plaintiffs account. The hearing officer did not specifically address these elements, as required by Bruno. Instead, the hearing officer resolved the case on a finding that the plaintiff had reasonably feared disciplinary repercussions if he reported a work-related accident to Firestone. The |8court of appeal found the record supported the hearing officer’s conclusion the plaintiff feared repercussions for reporting a work-related injury. The court of appeal further reasoned that the inconsistencies in the plaintiffs' statements and actions with regard to whether an accident had occurred were not sufficient to cast a serious doubt on his account of the accident. Under Bruno, however, an unwitnessed accident may be proved by the testimony of the employee alone only if (1) no other evidence discredits or casts serious doubt upon his version of the accident and (2) his testimony is corroborated by the circumstances following the accident. Our review of the record reveals the plaintiff failed to meet his burden of proving both exceptions.
We first find there was evidence produced that either discredited or cast serious doubt on the plaintiffs account of a work-related accident. Here, the plaintiff employee failed to report the accident to his employer for some eighteen months, or until he was denied additional benefits under the employer’s Accident & Sickness program and denied a return to employment in a light-duty position. As the hearing officer acknowledged, that delay, along with the repeated denials of a work-related accident, required explanation and called into question the plaintiffs later claim that a work-related accident had occurred. As Firestone points out, when specifically asked within days or weeks of the alleged accident by Firestone’s safety manager whether he had suffered an accident at work, the plaintiff denied injuring himself, instead noting only that his knees were hurting. The plaintiff had undergone arthroscopic surgery on his right knee some twenty years earlier. He told both the safety manager and the nurse that he *221 was going to see his doctor because of the knee pain, but there is no indication that he told Dr. Broussard that he had suffered a work-related accident by nearly falling off his bicycle. Instead, Dr. Broussard’s records indicate the plaintiff denied “any falls or 1 ¡Injuries” and indicated that, although the plaintiff had been doing well since his earlier surgery, “it is now getting progressively worse.” When questioned at trial, the plaintiff explained that he was in so much pain at the time that he forgot to tell either the safety manager or his doctor about the accident.
Although the plaintiff believed he had reported the accident to his orthopedic surgeon, Dr. Hinton, who ordered an MRI and diagnosed a meniscal tear to the plaintiffs right knee, Dr. Hinton’s narrative report of July 14, 2006, does not indicate the plaintiff reported a work-related injury. Instead, the report stated the plaintiff reported difficulty with his right knee, that he sustained a twisting injury to the knee, and that the plaintiff indicated he had “dealt with it long enough” and “wanted it removed.” Although his direct testimony suggested he had reported the twisting injury to Dr. Hinton as stemming from a work-related accident, the plaintiff on cross-examination admitted he had previously testified in deposition that it was Dr. Hinton who had described the injury as “twisting.” Thus, while the plaintiff suffered some type of injury, any suggestion that the injury was incurred allegedly as the result of a work-related accident was not indicated in the medical records as having been reported as such to either of the plaintiffs physicians.
After the successful surgery on his knee and his return to work under a full release, the plaintiff began again to experience pain in his right knee, but he still did not report the alleged bicycle accident to his employer or doctor. In an email to the company nurse dated March 8, 2007, he stated: “I guess it is here we go again. I’m trying to get to a doctor today. The problem is the stairs. For each set of batches it is 2 trips up 28 flights for the initials and 2 trips down. Then 30 min. later it is the same for the finals. I don’t know what is going to happen, but I will stay in touch.” The plaintiff also did not report the accident to his employer when he again “went out” on disability a few days later after seeing his doctor on March 11012, 2007. Dr. Hinton’s report from that visit made no mention of a work-related accident, but instead noted the plaintiff complained he was having problems with both knees and his problems involved “going up and down the stairs at work.” An MRI was conducted on each knee, after which Dr. Hinton diagnosed the persistent pain as “likely due to osteoarthritis.” A bone scan reviewed by Dr. Hinton on May 4, 2007, revealed “degenerative joint disease as expected.”
In June of 2007, the plaintiff was referred to Dr. Enrique Mendez, an arthritis specialist. Dr. Mendez’s records also do not indicate the plaintiff reported a work-related injury, but instead he reported a history of knee pain “after climbing stairs.”
The plaintiff failed to report to his employer even the possibility of a June 2006, work-related injury until late in 2007, either in October or November 2007, when he first indicated “not sure” on the monthly A & S form as to whether the accident was work-related. Even then, when he was specifically asked by the occupational health nurse what he meant by filling out the form in that manner, the plaintiff did not report the bicycle accident to Firestone, but instead repeated that his knees were hurting him.
When queried as to why he had not reported the accident to anyone, though he *222 believed he had done so, the plaintiff initially claimed he had either forgotten or had been in too much pain to remember when talking to the safety manager or consulting his doctors, but then he ultimately claimed he had not reported a work-related accident because he feared negative repercussions for violating an unwritten rule at Firestone not to report accidents. While not every delay in reporting an accident necessarily discredits or casts serious doubt on the employee’s account of the accident, we conclude the particular circumstances surrounding the failure to report the alleged work-related accident in this case do ^indeed discredit or cast serious doubt on the plaintiffs claim that a work-related accident occurred sometime in June 2006.
Although Dr. Hinton diagnosed a meniscal tear to the right knee, which was repaired by July 2006 surgery, there is no corroborating evidence the injury was incurred in a June 2006, work-related accident. The only evidence the plaintiff presented was Dr. Hinton’s August 12, 2008 letter to the plaintiffs attorney, which stated that the plaintiff had “sustained an on the job injury to his right knee,” even though, as discussed above, Dr. Hinton’s records otherwise contained no report or notation of a work-related accident. Therefore, to resolve the question raised by the delay in reporting the accident and to satisfy the absence of corroborating evidence of a work-related accident, the hearing officer concluded that Firestone had created an environment in which it discouraged the reporting of work-related accidents, ostensibly justifying the plaintiffs failure to report the accident until he filed suit against Firestone.
Firestone’s safety manager, Steven Tra-han, denied the existence of an unwritten policy that employees should not report a work-related accident. Trahan further testified employees were not reprimanded for reporting an accident, though they could possibly be reprimanded for failing to report an accident. Trahan further testified the plaintiff had suffered an accident involving his hands in 2001, and was, at that time, “written up for unsafe activity.” The hearing officer observed there was confusion over the circumstances surrounding the prior hand accident and the consequences of reporting it. Although Firestone had argued the plaintiff had previously reported a slip-and-fall accident in 2000 and had incurred no sanctions for doing so, the court of appeal noted the 2000 accident had preceded the 2001 accident involving the plaintiffs hands. The court of appeal further reasoned the plaintiffs return to full duty following his surgery supported his | ^assertion that he simply wanted to resolve his knee problem and return to work without running the risk of a reprimand or suspension.
In short then, the hearing officer, and the court of appeal, relied on the plaintiffs own testimony as to why he did not report the accident to resolve the inconsistencies in his testimony regarding his failure to report the accident and to corroborate his account that a work-related accident had occurred. However, other than the plaintiffs testimony that he feared being reprimanded for reporting the accident, the evidence shows he was reprimanded only for unsafe activities, which had resulted in the accident involving his hands. The plaintiff did not deny that he might have violated Firestone safety policies when he injured his hands in 2001; instead, he simply explained that the accident had occurred around the time of the death of his father. Further, the plaintiff, when asked if falling off his bicycle violated any of Firestone’s safety rules, replied that Firestone had many rules of which he might not be aware. To find the *223 existence of an unspoken policy against reporting accidents, based on this evidence alone, the hearing officer committed manifest error.
As we observed in Rosell v. ESCO, “where documents or objective evidence so contradict the witness’s story, or the story itself is so inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story,” even a finding purportedly based upon a credibility determination may be deemed manifestly erroneous or clearly wrong. The only basis for his claimed fear is as follows: In 2000, the plaintiff reported an accident but was not reprimanded; in 2001, he reported an accident but was reprimanded for engaging in unsafe activity, which he did not deny; and then in 2006, he failed to report an accident because he feared being reprimanded, but he could not point to any safety rules he might have violated. Under the facts of this case, the hearing officer’s determination that the |iaplaintiff had a reasonable fear of being reprimanded if he reported the accident was not supported by the record evidence.
CONCLUSION
We conclude the appellate court erred in affirming the hearing officer’s finding that the plaintiffs account of an unwitnessed work-related accident was supported by the record evidence. Contrary to the requirements of Bruno, not only is there no objective evidence to corroborate the plaintiffs account of his work-related accident, but there are ample indicia that, when considered together, discredit or cast serious doubt on his account, to wit: his initial denial of an accident; his long delay in reporting the claimed work-related injury, even waiting until after Dr. Hinton diagnosed a twisting injury; his inconsistent accounts of why he delayed reporting the accident (fear of repercussions versus forgetting as a result of pain); and his admission well over a year after the claimed accidental injury that he was not sure of the cause of his knee pain. Although the hearing officer is required to make credibility determinations based on the testimony at a live hearing, the objective evidence in this record, combined with the plaintiffs internally inconsistent and implausible testimony, casts such suspicion on his account of the accident as to show manifest error in the hearing officer’s credibility finding. Accordingly, we reverse the lower courts’ rulings and render judgment in favor of the defendant.
DECREE
For the reasons set forth above, the decision of the • appellate court affirming the hearing officer’s award of indemnity benefits to the plaintiff is reversed; judgment is rendered in favor of the defendant; and the plaintiffs claims are dismissed with prejudice.
REVERSED AND RENDERED.

 Retired Judge Philip C. Ciaccio, appointed ad hoc, sitting for Chief Justice Catherine D. Kimball.