STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-635


GARY JEANSONNE

VERSUS

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS YOUTH
SERVICES, OFFICE OF JUVENILE JUSTICE AND SEDGWICK CLAIMS
MANAGEMENT SERVICES


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 02
PARISH OF AVOYELLES, NO. 16-03419
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, Shannon
J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.


**AFFIRMED IN PART, REVERSED IN PART.**


Amy, Judge, concurs in part and dissents in part and assigns reasons.

Conery, Judge, affirms in part and dissents in part for the reasons assigned by
Judge Amy.

**Maria A. Losavio**
**Losavio Law Office, LLC**
**Post Office Box 12420**
**Alexandria, LA   71315**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Gary Jeansonne**

**Jeff Landry**
**Attorney General**
**Bernetta Y. Bryant**
**Assistant Attorney General**
**900 Murray Street, Suite B-100**
**Alexandria, LA   71309**
**(318) 487-5944**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Department of Public Safety and Corrections Youth Services,**
      **Office of Juvenile Justice**

**GREMILLION, Judge.**

Gary Jeansonne sought benefits from his employer, the State of Louisiana, Department of Public Safety and Corrections Youth Services, Office of Juvenile Justice, in connection with injuries he allegedly sustained in two work-related accidents. The State denied both claims. The workers' compensation judge (WCJ) concluded that the claimant proved only one of the alleged accidents and denied penalties and attorney fees as to both claims. The claimant appeals. For the following reasons, we reverse in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY

Gary Jeansonne worked at the Cecil J. Picard Youth Center (hereinafter "the Center") in Bunkie, Louisiana, in the position of "Maintenance 2."[1] He began working there in 2001. His supervisor, Mr. Chris Hines, described Mr. Jeansonne as a "good employee" and a "[h]ard worker." Mr. Hines also consistently gave Mr. Jeansonne good evaluations. Also, according to Mr. Hines, Mr. Jeansonne did his work without complaining and was consistent in his work attendance.

Mr. Jeansonne last worked at the Center on March 17, 2016. On June 2, 2016, Mr. Jeansonne filed a disputed claim for workers' compensation form in which he asserted that he injured his back in the course and scope of his employment on June 10, 2015 and again on or about March 9, 2016. The claim was brought against the Department of Public Safety and Corrections, Youth Services, Office of Juvenile Justice[2] and Sedgwick Claims Management[3] (hereinafter collectively referred to as

---

[1] The record also lists Mr. Jeansonne's official title as "Maintenance Repair 2."

[2] The disputed claim form listed the State as the "Office of Juvenile Justice/PICard [sic] Center," but the claimant filed a first amending and supplemental petition to change the employer name to "Department of Public Safety and Corrections, Youth Services, Office of Juvenile Justice."

[3] The record reveals that Sedgwick Claims Management is the third-party administrator for the State, including for Mr. Jeansonne's claim.

"the State"). The State answered and denied that the claimant sustained an injury on or about the dates set forth.

The matter proceeded to trial. Mr. Jeansonne testified that the first alleged workplace accident occurred while he was assisting in the kitchen during the supper shift on June 10, 2015. He explained that, after lifting a pot to drain grease from it, he experienced pain radiating into his right leg. Mr. Jeansonne testified that the pain was immediate; that he knew something was wrong; that he told the cook on duty, Sarah Howard, that he had hurt himself; and that he sat down after they caught up on the work. Mr. Jeansonne's accident was corroborated by the testimony of Ms. Howard. During the course of the evening's work, Mr. Jeansonne again experienced back pain radiating into his hip and groin area. He explained that Ms. Howard then advised him to sit down again, which he did.

Mr. Jeansonne testified that the following morning, he telephoned his supervisor, Christopher Hines, to tell him that he was unable to come to work due to back pain but did not inform Mr. Hines that the back pain was work related. Mr. Jeansonne testified that Mr. Hines visited him at his home three days later. Again, Mr. Jeansonne did not tell Mr. Hines that the pain was work related. When asked about this, Mr. Jeansonne testified, "Because I -- I love my job. I'm dedicated to my job. I invest a lot in my job, I don't -- I just -- I like my job. . . . the right thing to do is to put it on my work -- my -- my insurance, so I can get back to my job and go to -- back to work."

On July 2, 2015, Dr. George Williams began treating Mr. Jeansonne for back pain. Mr. Jeansonne's medical records from this visit indicate that the injury

occurred at home, and the record from this initial visit with Dr. Williams was to prove pivotal in the WCJ's decision.[4]

Mr. Jeansonne asserted that the report is "not accurate" and that he told Dr. Williams that the injury happened at home because he "wanted to go back to work." Mr. Jeansonne explained that, other than the incident in the Center's kitchen, nothing happened at home or elsewhere to explain why his back started hurting at that time. Dr. Williams testified:

> Q.    Okay.  Did you ask him why he didn't tell you about the work accident before you did back surgery on him?
>
> A.    You know, he may have.  It may have been that he didn't want to fool with workman's [sic] comp, having to go through all the rigmarole, you know.

The remainder of Dr. Williams's records demonstrate widely varying dates of injury, including notations about the accident having occurred at home.

Dr. Williams ultimately performed back surgery on Mr. Jeansonne to fuse the L4-5 lumbar vertebral bodies on July 17, 2015.  Mr. Jeansonne testified that Mr. Hines and the regional supervisor over the Center, Johnny Qualls, visited him after his surgery and that he again did not report a work-place accident to them.

Mr. Jeansonne utilized his private health insurance for his medical expenses, and he used personal leave time during the recovery period.  Theresa Jeansonne, Mr. Jeansonne's wife, also testified at the hearing and explained that they chose to use private health insurance because they thought that Mr. Jeansonne would be unable to have the surgery if he reported the injury as a workers' compensation accident. Alternatively, she said they thought that it would be quicker under private health insurance, thus allowing Mr. Jeansonne to return to work sooner.

---

[4] The medical report contains the following description: "The onset was sudden with injury that occurred about four weeks ago.  The injury occurred at home.  The patient felt a sharp pain. He could not move."

3

On March 8, 2016, Dr. Williams granted Mr. Jeansonne a full release to return to work. Mr. Jeansonne stated that when he was reporting back to work on March 9, 2016, he "felt good" and as if he "could do the job . . . no problem," even knowing that he was going to have to do his full duties. Mr. Hines, though, assigned an inmate to assist Mr. Jeansonne with his tasks, but Mr. Jeansonne explained that the assistant never returned after lunch on the second day. Mr. Hines testified that he did not know whether the assistant left at some point because it would have been Mr. Jeansonne's job to supervise him. Mr. Jeansonne testified that he spent the initial days marking the soccer field, grouting the showers, working on vanities, removing vanities, removing faucets, and lifting toilets. He explained that when he went home every day, he would "go straight to bed" because his back was "getting . . . worse and worse." When asked whether there was a specific task that caused him to feel pain, Mr. Jeansonne said, that at midday on March 17, he had been changing out a faucet in one of the facility's cabins and, "I felt that something was broken again. . . .That's the way it felt when I come out from under that lavatory. I said 'Well, something -- something's not right.'"

Mrs. Jeansonne testified that "from March 9 on," Mr. Jeansonne complained of back and leg pain. She stated that his complaints subsequently increased and that every night was worse than the night before. Mrs. Jeansonne testified that Mr. Jeansonne had indicated to her that he felt like he had reinjured himself at work. She could not recall specifically what Mr. Jeansonne said had caused him to reinjure his back, but she testified that he told her during this time period that he was "[l]ifting up on a commode, grouting floors, wall, on the lawnmower . . . ."

Mr. Jeansonne said that on March 17, 2016, he went to the Center's office, turned in his keys, and told Mr. Hines, "I'm broken up. The wheel is broken" and "I can't perform the duties . . . ." Mr. Jeansonne testified that when Mr. Hines asked

4

him whether his back was all right, he answered, "'I don't know.'" He testified that Mr. Hines also asked whether it was job-related to which he responded, "'I can't tell you if it was job-related,'" and "'I know I didn't do nothin' [sic] at my house.'" According to Mr. Hines, when he asked Mr. Jeansonne if he had gotten hurt on the job, Mr. Jeansonne said, "No, Chris, I just can't do this kinda [sic] work anymore. The wheel is broken." Regarding the latter statement, Mr. Hines explained that he did not understand what it meant. Thereafter, Dr. Williams restricted Mr. Jeansonne from work again.

Mr. Jeansonne testified that he subsequently reported the alleged June 10, 2015 accident to the Center's human resources representative, Carolyn Hollins, on March 31, 2016. To corroborate this testimony, Mr. Jeansonne introduced Ms. Hollins' adjuster's log into evidence. An entry dated April 14, 2016 reads, in pertinent part:

> The claimant contacted me on 3/31/16 around 1:50 P.M. to advise of this 2015 injury. He indicated that he told his boss that he was in back pain following the incident but didn't [sic] inform him that the injury occurred at work. When asked why hes [sic] just reporting it he stated that he didn't [sic] want to lose his job or sue his employer by filing a comp claim. He just wanted to get better and return to work. He also mentioned that he injured his back while working at the Department of Education during Hurricane Gustav but failed to report that injury as well which required back surgery. He re-injured his back at work on 6/10/15 resulting in additional surgery to his pre-existing condition.

Mr. Jeansonne admitted that this conversation with Ms. Hollins was the first time he reported the alleged June 10, 2015 accident as work-related to someone associated with the State. He testified that during this conversation, he did not report the alleged March 9, 2016 accident to Ms. Hollins. Mr. Jeansonne admitted that he knew he was to report workplace accidents. He also confirmed that he had reported a work accident in 2014. At the hearing, Mr. Hines also testified that his job duties include instructing employees on the proper protocol for reporting work accidents. Pursuant

5

to this, he said that he has held safety meetings at which he reviews the center's policies and forms. He specifically confirmed that Mr. Jeansonne had attended such a meeting.

Mr. Hines testified that Mr. Jeansonne never told him that his back pain was work-related. Rather, Mr. Hines explained that he first learned of an alleged June 2015 workplace accident on March 31, 2016 from Ms. Hollins, who instructed him to contact Mr. Jeansonne and Ms. Howard to get statements from them. Mr. Hines stated that he obtained Mr. Jeansonne and Ms. Howard's statements[5] and that he also completed an "unusual occurrence report" concerning the alleged June 2015 accident. Mr. Hines testified that he was first notified about the alleged March 2016 workplace accident by Ms. Hollins on June 21, 2016 at which time he wrote a statement about what he recalled happening when Mr. Jeansonne came into his office on March 17, 2016.

After the alleged March 2016 accident, Mr. Jeansonne returned to Dr. Williams for treatment. Regarding his first visit on May 24, 2016, Mr. Jeansonne testified that he reported to Dr. Williams that he had injured himself at work in June 2015 and reinjured himself in March 2016.[6] Ultimately, Dr. Williams ordered an MRI, which revealed that Mr. Jeansonne's L3-4 intervertebral disc is herniated and compressing the nerve root. Dr. Williams has recommended that Mr. Jeansonne undergo surgery again. Dr. Williams testified that Mr. Jeansonne suffered an

---

[5] The record contains three exhibits that are purportedly Ms. Howard's statement regarding the June 2015 incident. In her deposition testimony, Ms. Howard explained that she handwrote her statement as well as a copy for Mr. Hines and that Mr. Jeansonne and/or Mrs. Jeansonne also handwrote a copy for themselves. Ms. Howard confirmed that her statement is dated June 10, 2015, signed by her, and reads: "Gary was cleaning skillet and draining water in pot and went to pick up the pot to dump and his back went out as he lifted the pot to dump it, as he was pulling the pan of beans out of the top of warmer his back gave out."

[6] The medical report dated May 24, 2016 contains the following: "The onset was sudden with injury which occurred on 3/17/2016. The injury occurred at work." The report does not include reference to a June 2015 work-place accident.

accident, but he could not say whether the accident occurred at home or at work nor which tasks would have caused the renewed back problem. Dr. Williams also opined, in response to cross-examination questioning, that Mr. Jeansonne's condition could represent a degenerative process. Additionally, in their respective testimonies, Dr. Williams and Mr. Jeansonne both confirmed that, prior to the alleged accidents, Mr. Jeansonne had been treated for back pain and had undergone surgeries on his back.

After the hearing, the WCJ rendered a judgment finding that the claimant sustained an accident in the course and scope of his employment on June 10, 2015 and was entitled to temporary total disability benefits from June 19, 2015 through March 8, 2016 as well as out-of-pocket medical expenses. However, concerning the June 2015 accident, the WCJ rendered judgment in favor of the State, concluding that the claimant failed to prove that he sustained an accident in the course and scope of his employment on or about March 9, 2016. In so ruling the WCJ stated:

> Mr. Jeansonne is a person of, in my view, small credibility, if any credibility at all. We have an individual who seems self-centered. He testified he never reported this because he was afraid he would lose his job. This was just the belief Mr. Jeansonne had that Mr. Qualls said was prevalent in the rural community. There is no direct evidence that Mr. Jeansonne knew of anyone who had been retaliated against for reporting a job accident who had lost a job for having had a job accident and a job injury, and again, it's just a belief of Mr. Jeansonne. He was willing to misrepresent to Dr. Williams that this was not a job accident. He told Dr. Williams it occurred at home, it was -- he said it occurred eight weeks prior to seeing Dr. Williams on one occasion, which would have made the accident or the injury or the back problem arise prior to June 10, 2015. He was willing to misrepresent to his health insurer Blue Cross and Blue Shield, that this was not a job-related claim.

Nevertheless, despite the facts enumerated above, all of which—if impacting upon credibility—undermine Mr. Jeansonne's claim of a first accident, the WCJ found that Mr. Jeansonne had proven the first accident by a preponderance of the evidence.

The WCJ also denied Mr. Jeansonne's claim for penalties and attorney fees.

7

In response, the State filed a suspensive appeal regarding the WCJ's finding of an accident in June 2015. Additionally, the claimant filed a devolutive appeal. However, the State subsequently filed a motion to dismiss its appeal, so only the claimant's appeal remains.

## ASSIGNMENTS OF ERROR

In his appeal, the claimant asserts as error:

1. The trial court erred in finding [the employer] had a reasonable basis for controverting the claims and erred in not awarding penalties and attorney's fees for [the employer]'s denial of the work accidents.

2. The trial court erred [in] finding Mr. Jeansonne failed to prove he suffered a compensable work accident on or about March 9, 2016.

3. The trial court erred in ruling against the injured worker by citing Dr. Williams['s] testimony that the second injury could possibly be just a progression over time.

4. The trial court erred in not awarding penalties and attorney's fees for failure to pay indemnity benefits and failure to authorize medical treatment for either of the work accidents.

5. An award of attorney's fees is warranted for the efforts put forth prior to the appeal and additional attorney's fees are warranted for appellate work.

## ANALYSIS

*Assignment of Error 1*

As mentioned above, the State withdrew its appeal of the WCJ's finding that the claimant proved that a workplace injury occurred in June 2015. Therefore, the only matters remaining concerning the June 2015 accident are the claimant's assertions that the WCJ erred in finding that the State had a reasonable basis for controverting the claims and in not awarding penalties and attorney fees. In response, the State contends that the claim was reasonably controverted and that the claimant is not entitled to penalties and attorney fees due to the claimant's failure to notify the State of the accident until March 31, 2016; the claimant's "inconsistent

statements to his treating physician" regarding the circumstances of his injury; and "the confusing testimony of [the claimant]'s own treating physician."

One purpose of the workers' compensation scheme is the prompt provision of compensation and medical benefits to an employee who has been injured in the course and scope of employment. *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, 15-2137, 15-2138 (La. 6/29/16), 194 So.3d 1112. Accordingly, La.R.S. 23:1201(F) provides guidelines for compliance, such as the time and place for payment, and states that the "failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty . . . together with reasonable attorney fees for each disputed claim[.]" However, penalties and attorney fees "shall not apply if the claim is reasonably controverted[.]" La.R.S. 23:1201(F)(2).

The State bears the burden of proving that it has reasonably controverted the claim to preclude the award of penalties and attorney fees. *Buchanan v. LUBA Workers' Comp.*, 14-1000 (La.App. 3 Cir. 2/4/15), 158 So.3d 253. An employer controverts the claim by demonstrating that it "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time [the State] refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. The decision to assess penalties and attorney fees is a question of fact that is in the great discretion of the WCJ, and it should not be reversed on appeal absent manifest error. *Cobb v. Lafayette Parish Sch. Bd.*, 16-990 (La.App. 3 Cir. 5/17/17), 220 So.3d 825, *writ denied*, 17-1481 (La. 11/13/17), 230 So.3d 209; *see also Johnson v. Great West Cas. Co.*, 15-981 (La.App. 3 Cir. 3/16/16), 186 So.3d 1276, *writ denied*, 16-0703 (La. 6/3/16), 192 So.3d 753. The Louisiana Supreme Court has instructed us that a two-part test determines whether a trial court has committed manifest error:

1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *Id.* The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.

*Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993).

There is no disputing the unusual circumstances of Mr. Jeansonne's claim. He did conceal the fact that he was hurt on the job from his supervisors, his healthcare provider, and his healthcare insurer. Contesting the validity of Mr. Jeansonne's claim under these circumstances cannot be deemed a frivolous legal dispute, and it certainly cannot be contested that the State possessed "factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time [it] refused to pay all or part of the benefits allegedly owed." *Brown*, 721 So.2d at 890.

Based on the foregoing, we conclude that the WCJ was not manifestly erroneous in finding evidence that the State reasonably controverted the June 2015 claim. *See Brown*, 721 So.2d 885. Therefore, we affirm the WCJ's decision not to award penalties and attorney fees.

*Assignments of Error 2 and 3*

Because the findings of the WCJ regarding Mr. Jeansonne's return to work in March 2016 and the issue of whether his new complaints are work-related rather than the result of degenerative changes, we will address Mr. Jeansonne's second and third assignments of error together.

10

An employee is entitled to compensation from an employer if the employee proves "personal injury by accident arising out of and in the course of his employment" by a preponderance of the evidence. La.R.S. 23:1031(A); *see also Marange v. Custom Metal Fabricators, Inc.,* 11-2678 (La. 7/2/12), 93 So.3d 1253. Louisiana Revised Statutes 23:1021 defines "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

An employee's testimony alone may prove the occurrence of an unwitnessed work-related accident if: "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Marange*, 93 So.3d at 1257; *see also Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). In this latter regard, corroboration can be provided by medical evidence as well as the testimony of the claimant's co-workers, spouse, or friends. *Ardoin v. Firestone Polymers, L.L.C.,* 10-245 (La. 1/19/11), 56 So.3d 215; *see also Bruno*, 593 So.2d 357.

On appellate review, the factfinder's determinations regarding the credibility of the claimant's testimony and whether the claimant has discharged his burden of proof are factual determinations that should not be disturbed unless clearly wrong or manifestly erroneous. *Marange*, 93 So.3d 1253. Under this standard of review, the appellate court should "focus on whether the trier of fact's determinations were reasonable based on the record as a whole" rather than re-weigh the evidence. *Id.* at 1259. If there are two permissible views of the evidence, then the factfinder's choice between them cannot be manifestly erroneous. *Ardoin*, 56 So.3d 215.

11

Considering the foregoing legal standard and in light of the claimant's assignments of error, we review the WCJ's determination that the claimant failed to prove that he sustained a compensable work-place injury on or around March 9, 2016. In the course of rejecting the claim, the WCJ noted the claimant's prior back problems and surgeries as well as the claimant's misrepresentations to his employer, doctor, and insurer about his prior back problems. We also note that these were all circumstances related to the first accident. The WCJ also pointed out that this would have been an unwitnessed accident. Discussing the circumstances following the alleged accident, the WCJ recalled that "there was a contact from Mr. Jeansonne March 31, 2016, which . . . would have been in the same month, reporting the 2015 injury"[7] but that during this conversation "[n]othing was reported by Mr. Jeansonne about any accident that occurred on any date in March of 2016 . . . ." The WCJ thus continued: "There's no support for an argument that Mr. Jeansonne reported any instance in March as an accident to any person in authority over him at the [employer]'s facility."

The claimant has additionally asserted that the WCJ "erred in ruling against the injured worker by citing Dr. Williams['s] testimony that the second injury could possibly be just a progression over time." In oral reasons for ruling, the WCJ referenced Dr. Williams's deposition testimony and stated:

> [Dr. Williams] was asked, "In fact is it your opinion more probable than not that the work accident of March 2016 caused the worsening at L-3, 4 level that was seen on the new MRI?" and he said at least to be symptomatic.
>
> . . . .
>
> Recall when Dr. [Williams] was asked previously by Counsel for the employer, could this . . . be nothing more than a progressive

---

[7] The workers' compensation judge was referencing the claimant's phone call with the human resources representative, Ms. Hollins, on March 31, 2016.

degeneration of what was already taking place in Mr. Jeansonne's back? And his response was yes, it can.

We are constrained to review the entire record to determine whether the WCJ's conclusions are manifestly erroneous; accordingly, we are not allowed to parse Dr. Williams's testimony and the medical record to find "some evidence" supporting or controverting the WCJ's opinion; rather, we must view the record in its entirety to see whether the WCJ's findings were reasonable.

The occurrence of the first accident is not before this court on review. But the circumstances surrounding it are clearly germane to the discussion of the second. Dr. Williams treated Mr. Jeansonne for a number of months, culminating in spinal fusion surgery. On March 8, 2016, Dr. Williams saw Mr. Jeansonne and noted that his muscle testing was normal in all areas. Ankle, lower leg, and upper leg sensation testing was all normal. Every test, in fact, was normal except that he demonstrated a positive Fabere's test on the right. This test had been negative in January 2016. Mr. Jeansonne told Dr. Williams, according to the records, that he was continuing to experience pain, which was aggravated by sitting. Further, Mr. Jeansonne also complained that he was still experiencing pain radiating into his right buttock. Nevertheless, Dr. Williams released Mr. Jeansonne to return to work. Of this work release, Dr. Williams testified:

> Q.     All right. So what—what was it that made you think he could go back to work on [March 8, 2016]?
>
> A.     Well, he was doing reasonably well. But, to be honest with you, he may have told me he wanted to go back to work or needed to go back to work, so we obliged.

At Dr. Williams's direction, Mr. Jeansonne had been subjected to several diagnostic imaging sessions. An MRI taken on July 2, 2015 demonstrated the "Right posterolateral disc protrusion" for which Mr. Jeansonne underwent surgery, his injury from the first accident. That same study revealed "circumferential disc

13

bulging" and "facet hypertrophic changes" at the L3-4 level, the level at which Dr. Williams proposes surgery now.

In May 2016, Dr. Williams ordered a new MRI. That MRI was performed on July 7, 2016, just over a year after the previous study. This MRI showed that Mr. Jeansonne had developed "Significant central spinal stenosis of L3-4 level." Clearly, according to the objective findings of the two MRIs, Mr. Jeansonne's condition changed between July 2, 2015 and July 7, 2016 other than the spinal surgery. And it is true that, while Dr. Williams said the findings at L3-4 *could* have been caused by a degenerative process, his testimony was that the findings *were* caused by "some type of accident." Mr. Jeansonne identified an incident after working under a sink when he felt that something was "broken again."

The WCJ then stated that in workers' compensation cases involving gradual deterioration or progressive degeneration, "there is some particular incident that the worker was still able to point to which allowed the Courts to conclude that [the worker] had established a precipitous identifiable event." Here, by contrast, the WCJ concluded that "there was no specific incident ever identified [by] Mr. Jeansonne or [Mrs.] Jeansonne." We disagree. There is no reasonable basis in the record for this finding; Mr. Jeansonne did identify an incident.

The WCJ concluded:

> In an attempt to balance all of the evidence and give proper weight to all this evidence considering foremost a lack of believability of Mr. Jeansonne, and even viewing the evidence in light favorable to Mr. Jeansonne, it's this Court's conclusion that Mr. Jeansonne has left this evidence concerning any type of incident that may be classified as an accident under the Workers' Compensation Act in March of 2016 at best evenly balanced.

After reviewing the record and considering the deference owed to the WCJ's determinations concerning credibility and whether the claimant met his burden of proof, we conclude that the WCJ's decision was not reasonable based on the record

as a whole. While the March 17 incident was unwitnessed, Mr. Jeansonne's actions thereafter in reporting that he could no longer work, and the objective findings of the MRI demonstrate an accident and an injury. Further, Dr. Williams opined that the L3-4 disc injury was caused by an accident.

With regard to Mr. Jeansonne's credibility, it is true that he exhibited what can, at best, be described as poor judgment. However, the WCJ particularly keyed on the fear Mr. Jeansonne expressed regarding the potential of losing his job after an on-the-job injury. The WCJ dismissed this fear as unfounded because Mr. Jeansonne had no firsthand knowledge of anyone losing a job in such circumstances. We note, though, that Mr. Johnny Qualls, Office of Juvenile Justice Regional Director for the Central Southwest Region, testified that this belief was relatively common in this community.

Mr. Jeansonne was a long-term employee of the facility who, by every account, demonstrated dedication to his position, worked consistently and without complaint, and—unwisely—opted to forego or avoid or circumvent the workers' compensation apparatus to expedite his treatment and return to work. Mr. Jeansonne chose to utilize his sick leave and vacation time rather than receive weekly indemnity benefits during his recovery from the July 2015 surgery. He pushed his orthopedic surgeon to return him to work, again, ill-advisedly. He returned to work with the understanding that the facility was going to provide him with an assistant, who did not return to help him after a day and a half, yet he still voiced no complaints and continued to work. These are the actions of a person who wants to work.

We, therefore, reverse the WCJ and find that Mr. Jeansonne did carry his burden of proof regarding the second accident. Mr. Jeansonne is awarded temporary total disability benefits from March 18, 2016 at the rate of $440.53 per week, together with judicial interest from the due date of each installment.

*Assignment of Error 4*

Mr. Jeansonne has also asserted that the trial court erred in finding that the State had a reasonable basis for controverting the claim regarding the March 2016 accident and in failing to award penalties and attorney fees. We disagree. The State's arguments can hardly be deemed frivolous. Mr. Jeansonne had a very long history of spinal problems. He failed to report either accident to his supervisors until after he had undergone surgery from the first. This assignment of error lacks merit.

*Assignment of Error 5*

Lastly, Mr. Jeansonne asserts that this court should award him attorney fees for the work done prior to and on appeal. The same considerations that preclude an award of attorney fees as discussed in assignment of error 4 preclude any attorney fees on appeal. The State did reasonably controvert Mr. Jeansonne's claim. The fact that the State ultimately lost on appeal does not free this court to punish it for exercising its right to trial. Awards of penalties and attorney fees in workers' compensation cases are not automatic and only attach when the statutory requirements are met. *See Sharbono v. Steve Lang & Son Loggers*, 97-110 (La. 7/1/97), 696 So.2d 1382; *Jeanise v. Cannon*, 04-1049 (La.App. 3 Cir. 2/23/05), 895 So.2d 651, *writs denied*, 05-785, 05-788 (La. 5/13/05), 902 So.2d 1021.

## SUMMARY

The evidence establishes that Mr. Gary Jeansonne sustained two accidents in the course and scope of his employment with the State of Louisiana, Department of Public Safety and Corrections Youth Services, Office of Juvenile Justice. The WCJ manifestly erred in finding that no accident was proven to have occurred on March 17, 2016. Mr. Jeansonne is entitled to temporary total disability benefits from March 18, 2016 in the amount of $440.53 per week, together with judicial interest from the due date of each installment.

All costs of this proceeding, in the amount of $1,624.45, are taxed as costs to the State of Louisiana, Department of Public Safety and Corrections Youth Services, Office of Juvenile Justice.

**AFFIRMED IN PART, REVERSED IN PART.**

NUMBER 17-635

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

GARY JEANSONNE

VERSUS

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS YOUTH
SERVICES, OFFICE OF JUVENILE JUSTICE AND SEDGWICK CLAIMS
MANAGEMENT SERVICES

AMY, J., concurring in part, dissenting in part.

I concur in the majority's determination that the workers' compensation

judge was not manifestly erroneous in finding evidence that reasonably

controverted the June 2015 claim. The record indicates that, after the June 2015

accident, Mr. Jeansonne misrepresented the origin of his back pain to his employer,

doctor, and health insurance provider. Thus, considering the foregoing, I agree

with the majority that the workers' compensation judge's decision not to award

penalties and attorney fees should be affirmed. I further agree to deny the request

for attorney fees for work performed on appeal.

However, I disagree with the majority's determination that Mr. Jeansonne

carried his burden of proof and is entitled to benefits regarding the alleged accident

on or around March 9, 2016. The employee must prove by a preponderance of the

evidence that he suffered an accident, which is defined as "an unexpected or

unforeseen actual, identifiable, precipitous event happening suddenly or violently,

with or without human fault, and directly producing at the time objective findings

of an injury which is more than simply a gradual deterioration or progressive

degeneration." La.R.S. 23:1021(1). *See also Marange v. Custom Metal*

*Fabricators, Inc.*, 11-2678 (La. 7/2/12), 93 So.3d 1253. An employee's testimony

alone may prove an unwitnessed accident if no other evidence discredits the

testimony and if the circumstances following the alleged incident corroborate the testimony. *Id.* The workers' compensation judge's determinations regarding credibility and the burden of proof should not be disturbed unless clearly wrong or manifestly erroneous. *Id.* The appellate court should not re-weigh the evidence but rather should focus on whether the determinations were reasonable based on the record as a whole. *Id.* If there are two permissible views of the evidence, then the workers' compensation judge's choice between them cannot be manifestly erroneous. *Ardoin v. Firestone Polymers, L.L.C.*, 10-0245 (La. 1/19/11), 56 So.3d 215.

Here, regarding the alleged March 9, 2016 accident, the workers' compensation judge discussed Mr. Jeansonne's long history of back problems and surgeries, as well as Dr. Williams' deposition testimony that Mr. Jeansonne's back pain could be progressive degeneration. The workers' compensation judge stated that this would have been an unwitnessed accident and concluded that evidence cast doubt on Mr. Jeansonne's version of events. Specifically, he noted that, when Mr. Jeansonne contacted his human resources representative on March 31, 2016, he reported the June 2015 accident but not the alleged March 9, 2016 accident. Additionally, when Mr. Jeansonne testified about the tasks he performed upon his return to work in March 2016, he was asked to identify the specific task that caused his renewed back pain, and he responded, "It was all of the above, I would think." Mr. Jeansonne testified that when he left work on March 17, 2016 and Mr. Hines asked if his renewed back pain was job related, he answered, "I don't know." Moreover, the workers' compensation judge stated that his decision was made "considering foremost a lack of believability of Mr. Jeansonne[.]" Accordingly, given the deference afforded the workers' compensation judge's assessment of credibility, I conclude that the workers' compensation judge's determination that Mr. Jeansonne failed to prove a workplace accident on or

2

around March 9, 2016 was not clearly wrong or manifestly erroneous.  In turn, I agree with the majority's determination that the workers' compensation judge did not err in finding that the State had a reasonable basis for controverting the claim.

For these reasons, I concur in part and dissent in part.

3

GARY JEANSONNE

VERSUS

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS YOUTH
SERVICES, OFFICE OF JUVENILE JUSTICE AND SEDGWICK CLAIMS
MANAGEMENT SERVICES


Conery, J., concurs in part and dissents in part for reasons assigned by Judge Amy.